## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| XIAFEN CHEN, | Case No. 1:19-cv-00045 |
| Plaintiff, | District Judge Timothy S. Black |
| v. | |
| UNITED STATES OF AMERICA, | **THE UNITED STATES OF AMERICA'S MOTION TO DISMISS** |
| Defendant. | |

Defendant the United States of America respectfully moves for dismissal of Plaintiff Xiafen Chen's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court should dismiss the Complaint because Plaintiff fails to allege sufficient facts to state a plausible claim for malicious prosecution or false arrest under applicable law.

A memorandum in support of this Motion follows.

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Plaintiff Xiafen Chen ("Chen") accessed a restricted, sensitive federal government database using a colleague's username and password, downloaded information from the database without proper authorization, and lied to federal law enforcement agents. Chen was indicted for those actions by a federal grand jury. Shortly before trial, after the Court denied Chen's motion to dismiss the indictment, the United States exercised its prosecutorial discretion to dismiss the indictment without prejudice. Chen now seeks monetary damages from the United States for malicious prosecution and false arrest.

Chen's Complaint should be dismissed. Her false arrest claim fails as a matter of law because she was arrested pursuant to a valid arrest warrant and has not alleged facts that would demonstrate that the warrant was utterly void. Her malicious prosecution claim likewise fails as a matter of law because the grand jury's indictment and superseding indictment establish a presumption of probable cause, and she has not pled facts to rebut that presumption. To rebut the presumption of probable cause, a plaintiff must allege facts demonstrating either that the grand jury received perjured testimony or that the grand jury proceedings were substantially irregular. Chen has not pled such facts. Lastly, her malicious prosecution claim separately fails as a matter of law because the criminal proceedings were not terminated in her favor.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

The National Weather Service hired Chen in 2007 as a hydrologist at the Ohio River Forecast Center in Wilmington, Ohio. (ECF No. 1, Compl. ¶30.) The National Weather Service is a component of the National Oceanic and Atmospheric Administration, an operating unit of the United States Department of Commerce ("DOC").

In the spring of 2012, Chen travelled to China to visit family. (*Id.* ¶¶ 27, 39, 48.) During her trip, she met with a former classmate, Jiao Yong. (*Id.* ¶48.) Jiao served as a Chinese government official. (*Id.*) During Chen's conversation with Jiao, Jiao asked questions regarding the United States' dam system and water volume. (*Id.* ¶49.) Chen advised Jiao she would find answers to his questions when she returned to the United States. (*Id.*)

Following her return to the United States, Chen attempted to find public information to answer Jiao's questions, but the task proved difficult. (*Id.* ¶50.) As part of that effort, Chen contacted Deborah Lee, who served as Chief of the Water Management Division of the U.S. Army Corps of Engineers (the "USACE"). (*Id.* ¶39.) Chen advised Lee that she had met with Jiao in China, that he had asked her questions about U.S. dams that she could not answer, and asked if Lee could provide answers to Jiao's questions. (*Id.*) Lee did not provide specific answers to

---

[1] The United States disputes that the facts alleged by Chen in her Complaint are accurate or complete, but the United States recognizes that, for purposes of this Motion, the Court must accept Chen's factual allegations as true. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 706 (6th Cir. 2015).

Chen, but Lee was concerned regarding Chen's inquiries and advised the USACE Division of Security of her concern. (*Id*. ¶41.)

During this time period, Chen also sought, and obtained, access to the USACE's National Inventory of Dams (the "NID"). (*Id*. ¶63.) The NID contains both information that is publicly available and, separately, information that is available only to approved governmental users. (*See* https://www.fema.gov/2018-national-inventory-dams; *see also id*. ¶78.) Chen obtained access to the NID using the username and password of a colleague, Ray Davis. (ECF No. 1, Compl. ¶67.) Chen asserts that, although she did not have authorized access to the NID or a username and password to access the database, Davis assisted her to navigate and download information from the NID database. (*Id*. ¶69.) Chen asserts that she had job-related reasons to access and download information from the NID database, but she does not allege that she sought or received proper authorization to access the secured database. (*Id*. at 69–71.)

In May 2012, Chen sent Jiao four emails, in which she provided him information she had found online. (*Id*. ¶¶ 51–52.) Chen's emails contained only publicly-available information. (*Id*. ¶52.)

In June 2013, Chen was interviewed by two agents from the DOC Office of Security as part of an investigation into Chen's actions. (*Id*. ¶45.) Approximately a year later, in June 2014, the agents prepared a Report of Investigation (the "ROI"). (*Id*. ¶59.) Chen makes no allegation regarding the investigation between the time of her interview and the preparation of the ROI in June 2014. With regard to the ROI

itself, however, Chen alleges that the ROI contained the following errors or omissions: it stated that Chen downloaded information from the NID with the purpose of sharing secret information with the Chinese government, it omitted that Davis stated Chen could have had a work-related reason for accessing the NID, it omitted that Davis shared his username and login to the NID with other employees, and it stated that Chen had admitted to accessing the NID to find information for Jiao. (*Id.* ¶¶ 63–64, 70–79.)

Chen asserts that the assigned DOC agents knew that the ROI would be shared with the FBI and federal prosecutors. (*Id.* ¶¶ 60–61.) Beyond simply sharing information with the FBI, however, the ROI reflected, under "assignment status," that the investigation was "closed" by DOC and "referred" to the FBI. (Exhibit A, Report of Investigation.)[2] Chen's Complaint, however, is silent with regard to the criminal investigation following the ROI. And, Chen makes no allegation of any misconduct or improprieties by any FBI employee or by federal prosecutors.

In October 2014, a grand jury returned a four-count indictment. (3:14-cr-149, ECF No. 5, Indictment.) Chen was indicted by the grand jury on one count of

---

[2] The facts presented in this Motion are derived from Chen's factual allegations, except where the United States relies on documents cited in the Complaint, public records, or other information of which this Court may take judicial notice. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) ("[A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment."). The ROI is referred to in the Complaint and is central to Chen's claims. The Court may therefore consider the ROI without converting this Motion to a motion for summary judgment. The ROI, however, is law enforcement sensitive. The United States attaches only the first page of the ROI at this time, and the United States has redacted substantive investigatory information from the exhibit. To the extent the United States relies on other portions of the ROI in subsequent briefing, the United States will, if necessary, seek an appropriate protective order or move to file appropriate portions of the ROI under seal.

stealing sensitive and restricted information from the NID (18 U.S.C. § 641), one count of exceeding authorized access to the NID (18 U.S.C. § 1030(a)(2)), and two counts of making false representations to investigators (18 U.S.C. § 1001). The false representation counts arose from Chen's false statements that she (1) never logged into the restricted portion of the NID without authorization, and (2) that she never downloaded data from the NID. (*Id.*)

Chen asserts that that the ROI "directly led" to her indictment. (ECF No. 1, Compl. ¶79.) Chen, however, fails to add detail to this conclusory allegation. Chen does not explain or allege *how* the ROI led to her indictment, and she does not identify what information in the ROI, if any, was presented to the grand jury (or how that information was presented). Indeed, Chen does not allege that any of the information in the ROI was specifically conveyed to the grand jury. Chen does allege (on information and belief) that one or more of the DOC agents testified before the grand jury, but she does not identify what the agents allegedly testified to, and she does not allege that their testimony included any of the information in the ROI that she asserts to be inaccurate. (*Id.* ¶118.)

Following Chen's indictment, the District Court for the Southern District of Ohio issued an arrest warrant, and Chen was arrested by FBI agents. (*Id.* ¶85.) Chen made her initial appearance on the date of her arrest, and she was released the same day. (*Id.* ¶¶ 92–93.)

Approximately three months later, in January 2015, the grand jury returned a superseding indictment of Chen. (3:14-cr-149, ECF No. 28, Superseding

5

Indictment.) The superseding indictment charged Chen with additional criminal offenses. In the superseding indictment, Chen was charged with one count of converting sensitive and restricted information from the NID for her own use (18 U.S.C. § 641), two counts of exceeding authorized access to the NID (18 U.S.C. § 1030(a)(2)) (the two counts alleged that Chen accessed the NID without authorization on two separate occasions, five days apart), and five counts of making false representations to federal agents (18 U.S.C. § 1001). (*Id.*) The new false statement counts arose from Chen's false statements that (1) she never obtained a co-worker's personal password to the NID, (2) she never used a co-worker's personal password to access the NID, and (3) the last occasion she was approached by Jiao was in 2011. (*Id.*)

Chen's Complaint is silent regarding the superseding indictment. She does not make any allegation regarding what additional investigation, if any, led to the further grand jury proceedings, she does not make any allegation regarding the further grand jury proceedings themselves, and she does not allege that the ROI had any connection whatsoever to the further grand jury proceedings. Chen did move to partially dismiss the superseding indictment during the course of her criminal proceedings, but her motion was denied. (3:14-cr-149, ECF No. 29, Mot. to Dismiss & ECF No. 44, Entry & Order.)

Chen's Complaint in this lawsuit argues at length that she did not commit espionage, never conspired with the Chinese government, "never betrayed national security interests or shared secret information," and never "accessed the restricted

NID database to find information for Mr. Jiao." (ECF No. 1, Compl. ¶¶ 7, 55–56, 64, 78.) Chen, however, was not indicted for espionage, conspiracy, or for providing sensitive information to Jiao. Rather, she was indicted for accessing a restricted database without proper authorization, downloading information from the database without authorization, and lying to federal law enforcement agents about those actions and her contact with Jiao.

In March 2015, shortly before trial, the United States moved to dismiss the indictment. (3:14-cr-149, ECF No. 45, Mot. to Dismiss.) In its motion, the United States explained that the dismissal was an exercise of the United States' prosecutorial discretion. (*Id.*) Chen asserts that, beyond this, the United States offered "no explanation or apology" for its decision. (ECF No. 1, Compl. ¶13.) The Court granted the United States' motion, and dismissed the indictment without prejudice. (3:14-cr-149, ECF No. 46, Order.)

## III.   ARGUMENT

### A.   Ohio Substantive Law Applies to Chen's Claims for Malicious Prosecution and False Arrest.

The Federal Tort Claims Act (the "FTCA") "does not create liability, it merely waives sovereign immunity to the extent that state-law would impose liability on a private individual in similar circumstances." *Huddleston v. United States*, 485 F. App'x 744, 745 (6th Cir. 2012) (*quoting Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994)); *see also* 28 U.S.C. § 2674. For that reason, "[c]ourts applying the FTCA look to the law of state in which the cause of action arose to determine liability and damages." *Id.*; *see also* 28 U.S.C. § 1346(b)(1) (limiting liability of the United States

to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred").

Here, Chen was employed in Ohio, indicted in Ohio, arrested in Ohio, and prosecuted in Ohio. (*See* ECF No. 1, Compl. ¶¶ 3, 37, 57, 102.) Chen's claims for malicious prosecution and false arrest therefore arose in Ohio, and her claims are governed by Ohio substantive law.

### B.    Chen's Complaint Fails to State a Claim for False Arrest.

Plaintiff's claim for false arrest fails as a matter of law because she alleges no defect in the arrest warrant that would render it utterly void. Ohio law is clear that an arrest executed pursuant to regular, facially-valid process does not support a claim for false arrest, even if the arrest is alleged to have been instigated maliciously and without probable cause.

Under Ohio law, a claim for false arrest requires a plaintiff to show: (1) that she was intentionally detained by the defendant, and (2) that the detention was unlawful. *Thacker v. City of Columbus*, 328 F.3d 244, 261 (6th Cir. 2003). An arrest warrant issued by a court, however, is a complete defense to an action for false arrest, unless the warrant is "utterly void." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (quoting *McFarland v. Shirkey*, 151 N.E.2d 797, 802 (Ohio Ct. App. 1958)); *see also Rogers v. Barbera*, 164 N.E.2d 162, 164 (Ohio 1960). An arrest warrant and supporting indictment is utterly void in only two situations: (1) if the indictment sets forth facts which could not, in any form, conceivably constitute a criminal offense or (2) if "the court issuing the process had no

8

jurisdiction over such offense or the person charged with the offense." *Friedman v. United States*, 927 F.2d 259, 262–63 (6th Cir. 1991) (quoting *Click v. Parrish*, 98 N.E.2d 333, 338 (Ohio Ct. App. 1950)); *see also Fairbanks v. City of Trenton*, No. 1:15-cv-33, 2016 WL 51223, at *2 (S.D. Ohio Jan. 5, 2016). But if the charging instrument leading to the arrest sets forth an offense under the applicable laws, "then there is an end to the entire controversy." *Brinkman v. Drolesbaugh*, 119 N.E. 451, 453 (Ohio 1918), *superseded in part on other grounds by statue*, O.R.C. § 2743.48. This is true even where the arrest was maliciously instigated without probable cause based on false charges. Ohio law is clear that in those situations, the only proper remedy can be a claim for malicious prosecution, and not false arrest: "[W]here the process on which the arrest is made is regular on its face, but is sued out maliciously and without probable cause, the remedy is an action for malicious prosecution." *Rogers*, 164 N.E.2d at 164; *see also Brinkman*, 119 N.E. at 454 (noting that if an imprisonment is lawful, it does not become any less lawful even if there existed a "malicious motive, or want of probable cause on the part of the prosecuting witness, or the officer causing the imprisonment"); *Eisnnicher v. Bob Evans Farms Rest.*, 310 F. Supp. 2d 936, 957 n.3 (S.D. Ohio 2004) (noting that the "processes and procedural safeguards attendant to the issuance of a warrant" limit the availability of false arrest claims where the arrest was made pursuant to a warrant).

Here, Chen's false arrest claim fails because she alleges no facts that would render the arrest warrant void. The Complaint acknowledges that FBI agents arrested her pursuant to a warrant issued by a federal judge based on a duly-

returned grand jury indictment that agents read aloud to her at the time of her arrest. (*See* ECF No. 1, Compl. ¶¶ 84–86.) The Complaint contains no allegations that the warrant was substantively or procedurally improper in any way. Relevant to her false arrest claim, Chen does not allege either that the indictment and warrant failed to set forth facts which could conceivably constitute a criminal offense or that the court issuing the warrant lacked jurisdiction over her or the charged offenses. *See Click*, 98 N.E.2d at 338. Rather, the facts set forth in the grand jury indictment conceivably constituted federal criminal offenses over which the United States District Court for the Southern District of Ohio had jurisdiction. (*See* 3:14-cr-149, ECF No. 5, Indictment (charging Plaintiff with violations of 18 U.S.C. §§ 641, 1001 & 1030(a)(2)).) Because the arrest warrant was regular on its face and not utterly void, it serves as a complete defense to Chen's claim for false arrest. Moreover, Ohio law is also clear that the allegations actually underpinning her false arrest claim—*i.e.*, that DOC agents maliciously prepared an initial referral that contained false statements eventually leading to Plaintiff's arrest by FBI agents over four months later—do not constitute a claim for false arrest. At most, allegations that a defendant instituted a criminal proceeding out of malice and without probable but pursuant to lawful process may form the basis for a claim of malicious prosecution, not false arrest. *Rogers*, 164 N.E.2d at 164; *Walker v. Kroger's*, No. L-93-162, 1994 WL 159764, at *2 (Ohio Ct. App. Apr. 29, 2014). Accordingly, the Complaint does not state a claim for false arrest—and for the reasons noted *infra*, it does not state claim for malicious prosecution either.

### C. Chen's Complaint Fails to State a Claim for Malicious Prosecution.

Under Ohio law, to prevail on a claim for malicious prosecution, a plaintiff must establish: (1) a maliciously instituted prior proceeding by the defendant, (2) a lack of probable cause, and (3) that the prior action was terminated in the plaintiff's favor. *Friedman*, 927 F.2d at 261–62 (*citing Rogers*, 164 N.E.2d at 162). Malicious prosecution claims are viewed by Ohio courts with "marked disfavor," and "courts have allowed recovery only when the requirements of these actions have been fully complied with." *Dailey v. First Bank of Ohio*, 2005-Ohio-3152, ¶14, 2005 WL 1483678 (Ohio Ct. App. June 23, 2005). The disfavored status of claims for malicious prosecution under Ohio law reflects a "public policy to discourage lawsuits which inhibit enforcement of the criminal laws." *Adamson v. May Co.*, 456 N.E.2d 1212, 1216 (Ohio Ct. App. 1982).

Chen's Complaint should be dismissed because (1) the grand jury's indictment and superseding indictment establish a presumption of probable cause, and Chen has not pled sufficient facts to overcome that presumption; and (2) Chen's criminal proceedings were not terminated in her favor.

1. *Chen's Indictment and Superseding Indictment Establish a Presumption of Probable Cause, and Chen's Complaint Fails to Allege Sufficient Facts to Overcome that Presumption.*

Under Ohio law, an indictment of the accused by a grand jury is *prima facie* evidence that there was probable cause for the prosecution. *Adamson*, 456 N.E.2d at 1215. Thus, an indictment establishes a "legal presumption" of probable cause, "unless the . . . grand jury proceeding received perjured testimony or was otherwise

11

significantly irregular." *Id.*; *Reinoehl v. Trinity Universal Ins. Co.*, 719 N.E.2d 1000, 1007 (Ohio Ct. App. 1998); *Pierce v. Woyma*, 2012-Ohio-3947, 2012 WL 3758631, *4 (Ohio Ct. App. Aug. 30, 2012); *Carlton v. Davisson*, 662 N.E.2d 1112, 1121 (Ohio Ct. App. 1995). This rule reflects a long-standing judicial experience that grand juries "are reasonably well devised to find whether probable cause exists for the prosecution." *Adamson*, 456 N.E.2d at 1216.

The Sixth Circuit addressed this issue in *Friedman v. United States*. In *Friedman*, the plaintiff was indicted by a federal grand jury for embezzlement, and was convicted at trial. 927 F.2d at 261. On appeal, the plaintiff was granted a new trial. *Id.* Following that decision, the United States moved to dismiss the indictment, and the motion was granted by the district court with prejudice. *Id.* The plaintiff then filed suit against the United States, raising claims under the FTCA for malicious prosecution and false arrest. *Id.* With regard to his malicious prosecution claim, the plaintiff asserted that "if information held by the United States had been given to the grand jury, probable cause would not have existed." *Id.* at 262. The plaintiff, however, did not allege that any witness had offered perjured testimony to the grand jury, and the plaintiff did not allege that the grand jury proceedings were procedurally irregular. The United States moved to dismiss, the district court granted the United States' motion, and the Sixth Circuit affirmed. The Sixth Circuit explained that "[t]he return of an indictment by the grand jury is evidence of probable cause, and the plaintiff has the burden of producing substantial evidence to establish a lack of probable cause." *Id.* The Sixth Circuit

12

further explained that the plaintiff had failed to allege sufficient facts to demonstrate that he could "rebut the presumption" established by the indictment, and that dismissal of the Complaint was therefore required. *Id.*

Chen acknowledges that she was indicted by a federal grand jury prior to her arrest. (ECF No. 1, Compl. ¶57; *see also* 3:14-cr-149, ECF No. 5, Indictment & No. 28, Superseding Indictment.) With regard to the indictment, Chen alleges that the ROI "laid the foundation" for and "directly led" to the indictment. (ECF No. 1, Compl. ¶¶ 10, 79, 116.) Chen, however, does not allege *how* the ROI provided a foundation for the indictment, *how* the ROI led to the indictment, or whether any allegedly false statements were made to (or allegedly false information provided to) the grand jury. Similarly, although Chen alleges (on information and belief) that one or more of the DOC agents testified before the grand jury, she does not identify what the agents allegedly testified to, and she does not allege that their testimony included any of the information in the ROI that she asserts to be inaccurate. (*Id.* ¶118.)[3] Most importantly, Chen never alleges that the DOC agents—or anyone else—offered perjured testimony to the grand jury. Further, Chen makes no allegations at all regarding the grand jury's superseding indictment. For these

---

[3] Chen's allegation that a piece of information is included in the ROI does not itself make it inescapable that the same information was presented to the grand jury, or that the information was presented to the grand jury in the same manner as in the ROI. The determination of what witnesses and documents to present to the grand jury rested with the assigned Assistant United States Attorneys. Moreover, as discussed previously, the ROI did not necessarily reflect the final findings of the United States' investigation of Chen. As Chen notes in her Complaint, the FBI was the agency responsible for her indictment and arrest. (ECF No.1, Compl. ¶¶ 10, 37, 60, 84, 88.) The ROI reflected that the investigation was closed by the DOC and referred to the FBI. (Exhibit A, Report of Investigation.) Chen does not allege how the information from the ROI was utilized by FBI, what further investigation was done following the transfer of the investigation to the FBI, or what information from the ROI, if any, was presented to the grand jury.

reasons, Chen's Complaint fails satisfy her burden to plausibly allege that the grand jury's indictment and superseding indictment were the product of perjured testimony.

Chen's allegations regarding the ROI are also insufficient because her allegations are wholly disconnected from the actual criminal charges for which she was indicted. For example, Chen asserts that the ROI falsely accused Chen of accessing the NID for the purpose of sharing sensitive information with the Chinese government. (ECF No. 1, Compl. ¶¶ 63–64.) Chen also repeatedly asserts that an "alleged conspiracy" between her and the Chinese government did not exist, and that she was not acting as a spy for the Chinese government. (*Id.* ¶¶ 43, 56.) Chen, however, was not indicted for espionage, conspiracy, or for accessing the NID for the purpose of sharing sensitive information with the Chinese government. Rather, she was indicted for improperly accessing the NID, improperly downloading information from the database, and for making false statements to investigators about her access to the NID and her contact with a Chinese government official. (3:14-cr-149, ECF No. 28, Superseding Indictment.)

Chen similarly alleges that the ROI wrongfully omitted that she did not share the information downloaded from the NID. (ECF No. 1, Compl. ¶70.) Chen, however, was not indicted for sharing information from the NID. None of the charges against Chen were premised upon a factual allegation that she had shared information from the NID with Jiao—or anyone else. And, none of the charges

14

against Chen required the United States to prove, as an element of the offense, that Chen had disseminated information for the NID to others.

Chen makes this same error in alleging that the ROI omitted statements by Davis that the NID "could have been useful and helpful" to Chen in her job, and that Davis allowed other individuals to access the NID using his username and password. (ECF No. 1, Compl. ¶¶ 71–75.) Here again, whether the information in the NID could potentially be useful to Chen is irrelevant to whether she improperly obtained access to the database by using a co-worker's login information, improperly downloaded information from the database, and made false statements to investigators. And, whether other federal employees also obtained unauthorized access to the NID is wholly irrelevant to the charges against Chen.

The United States offers one final example. In Count 8 of the superseding indictment, Chen was indicted under 18 U.S.C. § 1001(a)(2) for falsely asserting to investigators that Jiao last approached her in 2011. (3:14-cr-149, ECF No. 28, Superseding Indictment.) Chen's Complaint is silent as to the facts underlying this charge. Chen does not allege that agents falsely asserted she made this statement, does not deny she made the statement, and does not deny that the statement was false. To the contrary, the allegations in Chen's Complaint implicitly concede that her statement was indeed false. Her Complaint alleges—in direct contradiction to her statement to investigators that Jiao last approached her in 2011—that she travelled to China in the spring of 2012, met with Jiao, and sent him four emails upon her return to the United States in May 2012. (ECF No. 1, Compl. ¶¶ 48–51.)

15

Finally, Chen's malicious prosecution claim fails as a matter of law because she fails to allege that the grand jury proceedings were substantially irregular. Chen's Complaint is silent on this issue, and the indictments themselves do not demonstrate any procedural irregularities. To the contrary, the indictments display all the hallmarks of procedural regularity. The indictments properly identify the charges against Chen and the basis for those charges, and the indictments are signed by the foreperson of the grand jury. That Chen may not possess a copy of the grand jury transcript does not obviate her obligation to plead, with appropriate specificity, that the grand jury proceedings were substantially irregular. *See Dailey*, 2005 WL 1483678, at *5 ("However, because the grand jury proceeding transcript is not in the record on appeal, there is no evidence that the grand jury proceeding was irregular. Accordingly, we look only to see if appellant met her burden of producing 'substantial evidence' that the indictment resulted from perjured testimony.")[4]

For all of these reasons, Chen fails to plead facts sufficient to overcome the presumption of probable cause established by the grand jury indictment and superseding indictment. Her Complaint should be dismissed.

---

[4] Counsel for the United States in this action have not reviewed a copy of the grand jury transcript. Although the plain language of Rule 6 of the Federal Rules of Criminal Procedure provides an exemption to grand jury secrecy for "an attorney for the government . . . in performing that attorney's duty," the Supreme Court has held that the exemption does not apply to civil attorneys employed by the Department of Justice, if the information is to be used in furtherance of a civil action. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418 (1983).

16

2. *Plaintiff's Claim for Malicious Prosecution Fails Because the Criminal Proceedings Were Not Terminated in Her Favor.*

Plaintiff's malicious prosecution claim also fails as a matter of law because the underlying criminal proceedings were not terminated in her favor. The United States Attorney exercised his prosecutorial discretion to dismiss the charges without prejudice. The dismissal was not an adjudication on the merits in Plaintiff's favor, did not indicate that Plaintiff was innocent, and did not absolve her of any wrongdoing.

Ohio law provides that a "proceeding is terminated in favor of the accused only when its final disposition indicates that the accused is innocent." *Ash v. Ash,* 651 N.E.2d 945, 947 (Ohio 1995). A plaintiff must demonstrate that "that the charges were actually adjudicated *on the merits* in [plaintiff's] favor" and that the plaintiff "was absolved of any wrongdoing." *Palshook v. Jarret,* 32 F. App'x 732, 736 (6th Cir. 2002) (unpublished opinion). While an "unconditional, unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor" may constitute a termination in favor of the accused, *see Ash,* 651 N.E.2d at 948, a dismissal without prejudice that permits the refiling of criminal charges does not constitute an unconditional dismissal or support a later claim for malicious prosecution. *Broadnax v. Green Credit Svc.,* 694 N.E.2d 167, 172 (Ohio Ct. App. 1997); *see also Buchanan v. Reeve*, No. 1:03-CV-751, 2005 WL 1652188, at *8 (S.D. Ohio Apr. 8, 2005), *report and recommendation adopted by*, 2005 WL 1652241 (S.D. Ohio July 12, 2005); *Taylor v. Montoya*, No. 1:11-cv-1901, 2012 WL 2120716, at *6

(N.D. Ohio June 8, 2012) (holding that a Rule 48 dismissal after accused's lawyer had uncovered favorable information was not a termination in the accused's favor).

Here, the United States Attorney's discretionary decision to dismiss the charges without prejudice was not an adjudication in Plaintiff's favor on the merits that absolved her of any wrongdoing. First, this final disposition in no way indicated that Plaintiff was innocent of the charges. Plaintiff does not allege any adjudication on the merits in her favor, and the government's motion to dismiss clearly provides that dismissal was the result of prosecutorial discretion, rather than an adjudication on the merits. (*See* 3:14-cr-149, ECF No. 45, Mot. to Dismiss at PageID ## 312–13 ("Here, the United States elects to exercise its discretion and discontinue prosecution of this case.").) Moreover, nothing in the record or Plaintiff's allegations suggests any determination, formal or informal, that Plaintiff was innocent. The superseding indictment had already survived Plaintiff's partial motion to dismiss, and trial had not yet commenced. *Cf. Taylor*, 2012 WL 2120716, at *6 (holding no termination in accused's favor where U.S. Attorney dismissed indictment pre-trial). Nor does Plaintiff allege any statements by the prosecution or the court suggesting any belief or concern that Plaintiff might be innocent. Rather, the Complaint notes to the contrary that the United States Attorney "offered no explanation or apology"—which is wholly consistent with the fact that this was not a termination in Plaintiff's favor.[5] (*See* ECF No. 1, Compl. ¶103.)

---

[5] But even if Chen had alleged that the U.S. Attorney expressed concerns about the merits of the case, the allegation would be insufficient to plead that the voluntary dismissal was a termination in her favor. Courts have repeatedly held that voluntary dismissals do not qualify as terminations in an accused's favor even when based on concerns about the merits of a case. For instance, in *Taylor v.*

18

Second, because the dismissal was without prejudice, it was not an unconditional, unilateral dismissal or an abandonment of the prosecution. Unless a contrary intent is expressed, Rule 48(a) dismissals are without prejudice to a subsequent indictment. *See United States v. Newsome*, 887 F.2d 1088 (6th Cir. 1989) (per curium) (unpublished table opinion) ("The government is normally free to dismiss one indictment and bring another indictment based on further development of the case under Fed.R.Crim.P. 48(a)." (citing *United States v. Mendendall*, 597 F.2d 639, 641 (8th Cir. 1979)); *see also United States v. Evers*, 552 F.2d 1119, 1123 (5th Cir. 1977); *United States v. Guron*, No. 1:08-cr-119, 2010 WL 2232269, at *4 (W.D. Mich. June 3, 2010) (collecting cases); 3B Wright et al., Federal Practice and Procedure § 801 (4th ed. 2013). The dismissal here indicated no intent that it should be with prejudice. Accordingly, it does not satisfy the elements of a malicious prosecution. *See Broadnax*, 694 N.E.2d at 172; *Buchanan*, 2005 WL 1652188, at *8.

## IV. CONCLUSION

For the above reasons, the United States respectfully requests that the Court dismiss the Complaint in this lawsuit with prejudice.

---

*Montoya*, the U.S. Attorney for the Northern District of Ohio dismissed an indictment after the accused's counsel diligently uncovered exculpatory evidence that had not been presented to the grand jury. 2012 WL 2120716, at *1, 6. Even though the judge overseeing the criminal proceeding indicated on the record that the prosecutor had "done the right thing," the dismissal did not constitute a termination on the merits in the plaintiff's favor, and the court dismissed plaintiff's subsequent malicious prosecution claim. *Id.*; *see also Broadnax*, 694 N.E.2d at 172 (dismissal of charges without prejudice because judge had concerns about the case did not qualify as termination in accused's favor). Here, Plaintiff's allegations do not even rise to the level of allegations in *Taylor* or *Broadnax*, let alone to the level required to support a claim for malicious prosecution.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

 s/ Matthew J. Horwitz
MATTHEW J. HORWITZ (0082381)
KEVIN A. KOLLER (NY 5180609)
Assistant United States Attorneys
Attorneys for the United States of America
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513)684-3711
Fax: (513)684-6972
Email: Matthew.Horwitz@usdoj.gov
Email: Kevin.Koller@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April, 2019, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which serves copies to

all parties of record.

s/Matthew J. Horwitz
MATTHEW J. HORWITZ (0082381)
Assistant United States Attorney