**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**CINCINNATI**

| | | |
|---|---|---|
| XIAFEN "SHERRY" CHEN | : | Case No.  1:19-CV-00045 |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Timothy S. Black |
| | : | |
| UNITED STATES OF AMERICA | : | |
| Defendant. | : | |
| | : | |

---

PLAINTIFF'S MEMORANDUM
**MOTION TO AMEND THE COMPLAINT AND MEMORANDUM IN SUPPORT**

**ORAL ARGUMENT REQUESTED**

---

**COMBINED TABLE OF CONTENTS AND SUMMARY PURSUANT TO**
**S.D. OHIO CIV. R.7(2)(A)(3)**

**I.     TABLE OF AUTHORITIES**………………………………………………...……6

**II.     INTRODUCTION**……………………………………...……………………………12

        This section provides that Plaintiff Xiafen "Sherry" Chen (the "Plaintiff" or "Chen") files

the Memorandum in Support of the Motion to Amend Her Complaint Pursuant to Rule 15(a)(2)

of the Federal Rules of Civil Procedure pursuant to the Court's order of August 28, 2019, by

which the Court provided Plaintiff may file: (1) a motion for leave to file an amended complaint,

pursuant to Fed. R. Civ. P. 15(a)(2); and/or a formal response in opposition to Defendant's

motion to dismiss (Doc.8)

."BACKGROUND……………………………………………………………..…...13

A. Plaintiff's Complaint……………………………………………………… ……14

This section describes Plaintiff's complaint that was filed on January 18, 2019 against the United States of America. Ms. Chen asserted in the First Claim for Relief that the actions of the government constituted malicious prosecution under Ohio law and the FTCA. (¶¶ 115-123). In the Second Claim for Relief, Plaintiff asserted that the actions of the DOC personnel that led to Plaintiff's unjustified arrest and detention without legal justification constituted false arrest under Ohio law and the FTCA. (¶¶ 124-128).

B. Defendant's Motion to Dismiss………………………………………………………15

The United States moved to dismiss for failure to state a claim on April 26, 2019. (ECF No. 8.) The United States moved to dismiss plaintiff's claim for false arrest on the ground that her arrest warrant was issued by a court, which is a complete defense to an action for false arrest, unless the warrant is "utterly void." The United States moved to dismiss the malicious prosecution claim on the ground that "(1) the grand jury's indictment and superseding indictment establish a presumption of probable cause, and Chen has not plead sufficient facts to overcome that presumption; and (2) Chen's criminal proceedings were not terminated in her favor." *Id.* at 11.

C. Proposed First Amended Complaint ("PFAC")……………………………………16

The PFAC alleges detailed facts to support that this is an action brought under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, and Davis v. Passman*, 442 U.S. 228 (1979) 403 U.S. 388 (1971) against (1) Defendants Andrew Lieberman, Michael Benedict, and "Does" for the malicious prosecution of Sherry Chen in violation of the Fourth and Fifth Amendment's Equal Protection (Count I); (2) Defendants

Lieberman and Benedict for fabrication of evidence under the Process Clause of the 5th Amendment (Count II) and (3) Desrosiers, D. Lee and "Does" in violation of the Fifth Amendment's Equal Protection and Due Process Rights (Count III) because of their unequal treatment of Ms. Chen based on her ethnicity and national origin. (¶¶ 24.-27) Further, pursuant to the Federal Tort Claims Act ("FTCA") and long-standing case precedents, *Carlson v. Green*, 446 U.S. 14, (1980),, this is an action under Ohio law for: (1) malicious prosecution (Count IV) and (2) abuse of process (Count V). (¶ 26). *Voyticky v. Village of Timberlake Ohio*, 412 F.3d 669, 675-76 (6th Cir. 2005) .

   II. ARGUMENT………………………………………………………………………..23

   A. Rule 15(a)(2) Provides that the Court Should Give Fee Leave to Amend a Pleading When Justice So Requires……………………………………………………………………23

Following *Foman v. Davis*, 371 U.S. 178,, 83 S.Ct. 227, (1962), this section analyzes the factors that courts have considered whether to permit a party to amend a complaint under Rule 15(a)(2), i.e., *Inge v. Rock Finan Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) ,and concludes that each of these factors strongly supports Plaintiff's present motion

   B. The Bivens Claims Against Defendants Andrew Liebermann, Michael Benedict, Renee Desrosiers, Deborah Lee, and Does Are Not Futile……………………………                    27

   *1. Sherry Chen May Pursue Her Bivens Claims* …………………………..……………  27

According to this section, Sherry Chen may pursue her *Bivens'* claims because she raised quintessential civil rights claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) Plaintiff alleges that defendant Andrew Lieberman, the lead case agent, and investigator, and defendant Michael Benedict, violated her Fourth and Fifth Amendments rights through malicious prosecution and fabrication of evidence (PFAC ¶¶ 182-186,

193-196) (Counts I, III). Sherry Chen also alleges that defendants Desrosiers, and D. Lee, violated her Fifth Amendment rights through impermissible racial and ethnic profiling. (¶¶ 187-192), (Count II). Indeed, these are exactly the type of flagrant constitutional violations *Bivens* and its progeny are intended to remedy and deter.

Count 1-Malicious Prosecution (Defendants Lieberman and Benedict).................34

This Section analyzes in detail each of the elements that a Plaintiff must satisfy to prove a claim for malicious prosecution under *Bivens* and *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir. 2010),concluding that Plaintiff has more than satisfied each of these elements and, therefore the Court should grant Plaintiff's motion under Rule 15(a)(2) with respect to this count.

Count II Equal Protection (Lieberman, Benedict, Desrosiers, D. Lee, and Does) ............................................................................................39

The PFAC also adds claims against Lieberman, Benedict, and Desrosiers. Lee ,and Does for equal protection violations under the Fifth Amendment in accordance with *Davis v. Passman*, 442 U.S. 228 (1979) This argues that the specific paragraphs in the PFAC alleging discrimination based on race and ethnicity (¶¶ 25, 58-69, 99-105, 154,), must be evaluated not only with respect to the other criminal cases cited therein where criminal indictments against three other Chinese-American scientists were dismissed based on a failure of proof, but also with respect to the extraordinary misconduct alleged as to defendants Lieberman and Benedict's investigation and the patently and outrageous treatment of Sherry Chen by Desrosiers, Lee and Does.

Count III Fabrication Under the Fifth Amendment (Lieberman and Benedict).........40.

This Section analyzes a claim under *Bivens* violation of Plaintiff's Fifth Amendment rights for the falsification of evidence. Under Sixth Circuit law, that there is an independent claim under the Due Process Clause of the Fifth Amendment for fabrication of evidence and this claim is not subsumed

in the Fourth Amendment malicious prosecution cause of action. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017)

2. Plaintiff's *Bivens'* Claims Are Not Barred by the Statute of Limitations…………………41

The government argues in its Motion to Strike that Plaintiff be denied the right to file an Amended Complaint on the grounds that "many, if not all, of the proposed amendments would be futile" because "the statute of limitations expired, at the latest on March 11, 2017—two years after the district court dismissed the indictment and terminated the criminal proceeding.." However, based on the controlling law, *McDonough v. Smith*, U.S., 139 S.Ct. 2149 (2019) the statute of limitations in the present case did not begin until on or about June 10, 2018, when the statute of limitations ran on the last remaining criminal count. Thus, Plaintiff's claims are timely.

3.Defendants Are Not Entitled to Qualified Immunity…………… …… .47

This Section establishes that none of the Defendants are entitled to qualified immunity. *Mullins v. Cyranek* 805 F.3d 760 (6th Cir. 2015

**C. The FTCA Claims Against Defendant United States** **49**.

Pursuant to the FTCA, this section analyzes the elements of the claim for malicious prosecution and abuse of process under *Voyticky v. Village of Timberlake Ohio*, 412 F.3d 669,(6th Cir. 2005) and concludes that Plaintiff has satisfied these elements under Ohio law.

1. *Malicious Prosecution* 49

2.*Abuse of Process* 51

**V.** **CONCLUSION** ………………………………………………………… 53
**VI.**

# TABLE OF AUTHORITIES

## CASES

*Andrews v. Scuilli,* 853 F.3d 690, 705 (3d Cir. 2017)..................................................... 48

*Ash v. Ash,* 72 Oh St.3d 520, (1995)............................................................................... 52

*Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006)         ………………………

    32

*Baranski v. Fifteen Unknown Agents of the BATF,* 452 F.3d 433 (6th Cir. 2006) ....................... 28

*Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)............................................. 34

*Bacon v. Pagera*, 772 F.2d 259, 264 (6th Cir. 1985)… n  ……………………………………….37, 38
*Bell Atl. v .Twombley,* 550 U.S 544,556 (2007)……………………………………………………25

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971)

    .....................................................................................................................*passim*

*Bishop v. Wood* S. 426 U.S 341. (1976)………………………………………………………...37

*Bistrian v. Levi*, 696 F.3d 352,365 (3d.. Cir. .2012) …………………………………         ….28

*Black v. Montgomery Cnty*., 835 F.3d 358, 372 (3d Cir. 2016)                            35, 41

*Carlson v. Green*, 446 U.S. 14, 19-20 (1980)                                    24, 33, 49

*Carnes v. Atkins Bros. Co*., 123 La. 26, 31, 48 So. 572, 574 (1909)............................................ 46

*Castro v. United States*, 34 F.3d 106 (2d Cir. 1994) .................................................... 49

*Devereaux v. Abbey*, 263 F.3d 1070(1074-75 (9th Cir. 2001) (en

    banc)……………………… …41

*Connelly v. Lane Const. Corp*., 809 F.3d 780, 791 (3d Cir. 2016)............................................... 38

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001) .................................. 8

*Davis v. Passman*, 442 U.S. 228 (1979*Dufort v. City of New York*, 874 F.3d 338, 351 (2d Cir. 2017) ........................................................................................................ 12, 15, 27, 30

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981) ........................................ 23

*FDIC v. Bates*, 42 F.3d 369, 373 (6th Cir. 1994) ...................................................................... 23

*Feldman v. American Memorial Life Insurance Co.*, 196 F.3d 783, 793 (7th Cir.1999) ............ 25

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, (1962) ............................................. 12, 22

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009)................................................... 37

*Goss v. Lopez*, 419 U.S. 565 (1975)…………………………………………………… . 37

*Green v. City of Southfield*, 925 F.3d 281 (6th Cir. 2018)…………………………………….24

)*Halsey v. Pfeiffer*, 750 F.3d 273, 289 (3d Cir. 2014) ........................................................ 35, 41

*Heck v. Humphrey*, 512 U.S. 477 (1994) .................................................................. 43, 44, 46

*Hernandez-Cuevas v. Taylor*, 836 F.3d 116, 124-25 (1st Cir. 2016) .................................... 28, 33

*Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)……………………………………….34

*Hope v. Pelzer*, 536 U.S. 730, 741 (2002). ................................................................................ 49

*Humbert v. Mayor and City Council of Baltimore City*, 866 F.3d 546, 556-57, 561-62 ............. 48

*Inge v. Rock Finan Corp.*, 388 F.3d 930, 936 (6th Cir. 2004)................................................. 22, 38

*Jang v. Boston Scientific Scimed, Inc.*, 729 F.3d 357, 367 (3d Cir. 2013) ................................. 22

*Jacobs v. Alam*, 915 F.3d 1026, 1037 (6th Cir. 2019)………..…..……………………… 29,30,33

*Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011)…………………………… …..……………………………………………...25

*Johnson v. Methodist Medical Center of Ill.*, 10 F.3d 1300, 1303 (7th Cir.1993)....................... 25

*Howard vs.City of Girard, Ohio*, 346 F.App'x49,50 (6th Cir. 2009)………………… 38

*Koprowski v. Baker*, 622 F.3d 248 (6th Cir. 2016)…………………………… …… …… 28,38

*King v. Harwood*, 852 F.3d 568, 583-84 (6th Cir. 2017) ............................................................ 35

*Leveto v. Lapina*, 258 F.3d 156, 159–60 (3d Cir. 2001)............................................................ 28

*Limone v. Condon,* 372 F.3d 39, 44-45 (1st Cir. 2004).......................................................28, 41

*Loumiet v. United States*, No. 12-1130 (CKK), 2017 WL 5900533, at *6 (D.D.C. Nov. 28, 2017)

...................................................................................................................................... 28

*Manning v. Miller*, 355 F.3d 1028, 1030-31 & n.1 (7th Cir. 2004)……………………………28

*Martin v. Maurer,* 581 F. App'x 509, 511 (6th Cir. 2014)………………………………………50

*McDonough v. Smith*, U.S., 139 S.Ct. 2149 (2019)......................................................... 43, 44, 45

*Meeks v. Larsen*, 611 F. App'x 277, 282 (6th Cir. 2015).......................................................... 28

*Miller v. Maddox*, 866 F.3d 386, 389, 588 (6th Cir. 2017)........................................................ 35

*Mills v. Barnard,* 869 F.3d 473, 484 (6th Cir. 2017)........................................... 35 ,41, 45, 53

*Moore v. City of Paducah*, 790 F.2d 557, 449 (6th Cir. 1986) ................................................ 22, 24

*Morse v. McWhorter*, 290 F.3d 795, 801 (6th Cir.,

2002) …………………………… ………………23

*Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015) ................................................................ 35, 48

*Moss v. United States,* 323 F.3d 445, 476 (6th Cir. 2003)............................................................ 24

*Mueller v. Gallina*, 311 F. Supp. 2d 606, 607–09 (E.D. Mich. 2004) .......................................... 28

*Mullins v. Cyranek* 805 F.3d 760 (6th Cir. 2015)................................. ......................................47

*Napue v. Illinois,* 360 U.S. 264, 269(1959)...................................................................................39

*Nwachukwu v. Karl,* 222 F.R.D. 208, 211 (D.D.C. 2004) ...................................................... 23

*Olson v. Champaign Cnty.*, 784 F.3d 1093, 1101-02 (7th Cir. 2015)........................................... 38

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015)…………………………………… …………..3

*Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) ................................................ 12, 21

*Perrian v. O'Grady,* 958 F.2d 192, 195 (7th Cir.1992) ......................................................... 25

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) .................................... 37

*Pitman v. Esperian Info. Sols, Inc.,* 901 F.3d 619, 640-41 (6th Cir. 2018) ............................ 12, 21

*Pitts v. State of Delaware*, 646 F.3d 151 (3d Cir. 2011) .......................................................... 38

*Quigley v. Tuong Vinh Thai, 707 F. 3d 675 (2013)* ...................................................... .........32

*Ricciuti v. N.Y.C. Transit Auth.*, F124 3d 123, 130 (2d Cir. 1997) .............. .................42, 48

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) ................ 21

*Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) ................ .........................33, 50

*Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) .......................... 21, 24

*Safford Unified Sch. Dist. No. 1 v. Redding* 557 U.S. 365, 377 (2009) ........................................32

*Schneyder v. Smith*, 653 F.3d 313, 330 (3d Cir. 2011) .................................................. 49

*Schuchardt v. President of the United Stat*es, 839 F.3d 336, 353 (3d Cir. 2016) ........................ 37

*Sterling v. Borough of Minersville*, 232 F.3d 190, 197 (3d Cir. 2000) ........................................ 49

*Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) ...................................................... 28, 35, 36

*Thunder Island Amusements, Inc. v. Ewald*, 650 F. Supp. 2d 195, 203 (N.D.N.Y. 2009) ........... 26

*Tun-Cos v. Perrotte*, No. 1:17-cv-0943-AJT-TCB, ECF 50 at 12-15 (E.D. Va. April 5, 2018) .. 27

*Turkmen v. Hasty*, 789 F.3d 218, 265 (2d Cir. 2015) .................................................. 27

*Unus v. Kane*, 565 F.3d 103, 122–23 (4th Cir. 2009) ......................................................... 26

*United States v. Agurs*, 427 U.S. 97, 104 (1976) ...................................................................39

*U.S v. Lochmondy,* 890 F.2d 817,822 (6th Cir. 1989) ......................................................... 40

 *Voytickyv. Village of Timberlake Ohio* 312, 675-(1990) ........................................................49, 51

*Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 409 (6th Cir. 2000) ........................................ 24

*Wilson v. Lawrence Cnty.*, 260 F.3d 946, 954 8th Cir. 2001)…………………………………………41

*Webb*. v U.S. 7895, 3d. 647,667 (6th Cir. 2015)……………………………………………   28, 32

*Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)............................................................................. 33

*Yopp v. U.S. Dep't of Justice Drug Enforcement Admin.*, No. 10-10118, 2010 WL 3272845, at *6

  (E.D. Mich. Aug. 19, 2010) ...................................................................................................... 26

*Wisconsin v. Constantineau*, 400 U.S. 433, 4376 (1971)…………………………………… ….37

*Ziglar v. Abbasi*, U.S., 137 S.Ct. 1843 (2017)..................................................................... passim

**Statutes**

U.S . Constitution Fourth and Fifth Amendments, …………………………………..…. passim

Federal Tort Claims Act 28 U.S.C. 1346, 28 U.S.C. 2671, ……………………………...…passim

TREATISES AND LAW REVIEW ARTICLES

Charles A. Wright & Arthur R. Miller *et al., Federal Practice and Procedure* § 1487 (3d

ed. 2010))…………………………………………………………………………………..26

 Daniel C. Richman & William J. Stuntz, *Al Capone's Revenge: An Essay on the Political

Economy of Pretextual Prosecution,* 105 COLUM. L. REV. 583, 583 (2005)…………………37

## I.    INTRODUCTION

Plaintiff Xiafen "Sherry" Chen ("Plaintiff" or "Chen") files the Memorandum in Support of the Motion to Amend Her Complaint Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.[1] On August 28, 2019, the Court granted Defendant's motion to strike the amended complaint and denied Plaintiff's motion to amend her complaint as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(B). (Doc #21). The Court, however, also *"sua sponte* establish[ed] a deadline of September 18, 2019, by which Plaintiff may file: (1) a motion for leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a)(2); and/or a formal response in opposition to Defendant's motion to dismiss (Doc. 8)."

In the [Proposed] First Amended Complaint ("FAC"), Plaintiff  Sherry Chen alleges the following: (1) that the Defendants Andrew Lieberman and Michael Benedict violated the Fourth and Fifth Amendment of the United States Constitution for the malicious prosecution of Sherry Chen under *Bivens* (Count I); (2) that the Defendants Lieberman and Benedict violated the Due Process clause of the Fifth Amendment by fabricating evidence; (Count II); (3) that the Defendants Desrosiers and D. Lee violated Sherry Chen's rights under the Fifth Amendment of the Constitution under *Bivens* (Count III): (4) that malicious prosecution against the United States under the FTCA and Ohio law (Count IV); and (5) that abuse of process against the United States under the FTCA and Ohio law (Count VII).

Rule 15(a)(2) provides that when a party seeks leave of court to amend a pleading, "[t]he court should freely give leave when justice so requires" and the case law in this Circuit "manifests liberality in allowing amendments to a complaint." *Parchman v. SLM Corp.*, 896 F.3d

---

[1] This Memorandum also includes discussion and responds to the government's motion to dismiss the complaint. (ECF #9). Plaintiff has considered the government's position with regard to the false arrest count alleged in the complaint and is no re-alleging that cause of action.

728, 736 (6th Cir. 2018) (citation and internal quotation marks omitted). Indeed, "[in] the absence of any apparent or declared reason-…- the leave sought should, as the rules require, be 'freely given.'" *Pitman v. Esperian Info. Sols,, Inc.,* 901 F.3d 619, 640-41 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, as established below, there is no "apparent or declared reason" for this Court to deny Plaintiff's motion to amend her complaint, and accordingly, the Court should grant the motion.

## II.  BACKGROUND

### A.  Plaintiff's Complaint

On January 18, 2019, Plaintiff filed her complaint against the United States of America under the Federal Tort Claims Act for malicious prosecution and false arrest (¶ 1). As alleged in the complaint, Plaintiff Sherry Chen is a naturalized U.S. citizen from China and was an acclaimed scientist at the National Weather Service's ("NWS") Ohio River Forecast Center in Wilmington, Ohio. (¶ 3). Upon returning from China in May 2012, she asked her supervisor, Trent Schade, and Deborah Lee a number of innocuous questions about the public available information on U.S. dams and total water volume.(¶ 5). After being contacted by Ms. Chen, Deborah Lee, reported the conversation to the United States Army Corp of Engineers ("USACE") Division of Security and reported Ms. Chen as a potential security threat (¶¶ 38-40). In an email, "Ms. Lee asserted that she was 'concerned that an effort is being made to collect' purportedly secret USACE information 'by a foreign interest – namely, the Chinese government" (*Id.*), despite that Ms. Chen had told her that was "looking for *publicly available* information for a colleague in China …." (¶ 43). Based on this e-mail and despite "the patently false accusations … and the openly racist language," the Department of Commerce's Office of Security" opened an investigation. (¶ 44).

On June 11, 2013, two Office of Security Agents, Lead Agent Andrew Liebermann and Agent Michael Benedict interviewed Ms. Chen at her Wilmington Office about her trip to China, her meeting with a former classmate there, Yong Jiao , and her attempt to find publicly available information for Mr. Jiao when she returned to the United States. (¶¶ 45- 52). Ms. Chen was completely candid during the seven hours long interview and "patiently explained the background of her May 24 telephone call to Ms. Lee and her trip to china that had preceded it." (¶ 47). Despite the lack of any evidence that Ms. Chen had committed a crime, on or about June 3, 2014, Lead Agent Andrew Lieberman prepared a Report of Investigation ("Report") that was intended to be shared with the FBI, and which contained "false and misleading statements and material omissions regarding Ms. Chen's conduct in May 2012. (¶¶ 58-78). The misleading and false statements and materials in the Report directly led to Ms. Chen's "indictment on October 16, 2014, and her arrest on October 20, 2014. (¶¶ 57, 80-98). The indictment charged Ms. Chen with multiple violations of federal law, including unauthorized access of a government database and theft of computerized fields of data. (¶ 57). The NWS suspended her from work without a salary, effective November 24, 2014. (¶ 101). Only one week before her trial was scheduled to commence, on March 10, 2015, the United States for the Southern District of Ohio voluntarily dismissed all of the charges against Ms. Chen, without prejudice. (¶ 102).

Despite the dismissal of the indictment, NOAA initiated their own investigation and terminated Ms. Chen on March 10, 2016. (¶¶ 104-105) on essentially the same roundless allegations. Ms. Chen, who has "due process" rights as U.S. employee, challenged her termination with U.S. Merit Systems Protection Board ("MSPB"). (¶ 106). In April 2018, the MSPB ordered Ms. Chen's reinstatement and in the 135 -page opinion, the Judge, agreeing with Ms. Chen that she had been a victim of a "gross injustice', was highly critical of the Department

of Commerce for its investigation leading to her arrest and subsequent termination of employment. (¶ 109). The agency appealed the ruling, which is now pending before the MSPB Board in Washington, D.C. (¶ 110). The DOC has reinstated Ms. Chen's salary and benefits but has refused to allow her to return to work. (¶ 111).

Based on the facts, as set forth in the Complaint, Ms. Chen asserted in the First Claim for Relief that the actions of Lieberman and Bennett constituted malicious prosecution under Ohio law and the FTCA. (¶¶ 115-123). In the Second Claim for Relief, Plaintiff asserted that the actions of the DOC personnel that led to Plaintiff's unjustified arrest and detention without legal justification constituted false arrest under Ohio law and the FTCA. (¶¶ 124-128). For both claims, Ms. Chen also asserted that she has suffered damages for which she is entitled to recover from the United States under the FTCA. (¶¶ 123, 128). Plaintiff has dropped the claim for false arrest under the FTCA and Ohio law.

### B. Defendant's Motion to Dismiss

The United States moved to dismiss for failure to state a claim on April 26, 2019. (ECF No. 8.) The United States moved to dismiss plaintiff's claim for false arrest on the ground that her arrest warrant was issued by a court, which is a complete defense to an action for false arrest, unless the warrant is "utterly void." Motion to Dismiss. *Id* at 8. In this case, the United States claimed that the arrest warrant was not "utterly void" because Plaintiff "allege[d] no facts that would render the arrest warrant void. *Id.* at 9.

The United States moved to dismiss the malicious prosecution claim on the ground that "(1) the grand jury's indictment and superseding indictment establish a presumption of probable cause, and Chen has not plead sufficient facts to overcome that presumption; and (2) Chen's criminal proceedings were not terminated in her favor." *Id.* at 11. With regard to the latter, the

United States asserted that the claim fails "as a matter of law, because the underlying criminal proceedings were not terminated in her favor." *Id.* at 17. In support, Defendant points to that Plaintiff's criminal charges were dismissed "without prejudice" (*Id.*) which means according to the government that "this was not an adjudication in Plaintiff's favor on the merits that absolved her of any wrongdoing," and it could have brought another superseding indictment against Plaintiff at any time to the running of the statute of limitations. *Id.* at 19. Of course, the United States never sought to bring new charges against Plaintiff.

   C.  *Proposed First Amended Complaint* ("PFAC")

   This is an action brought under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) and *Davis v. Passman*, 442 U.S. 228 (1979) against (1) Defendants Andrew Lieberman,  Michael Benedict, and "Does"1-10 for the malicious prosecution of Sherry Chen in violation of the Fourth and Fifth Amendment's Equal Protection (Count I); (2) Defendants Lieberman and Benedict for fabrication of evidence under the Process Clause of the 5th Amendment (Count II), Desrosiers, and "Does"  in violation of the Fifth Amendment's Equal Protection and Due Process Rights(Count III) because of their unequal treatment of Ms. Chen based on her ethnicity and national origin. (¶¶ 23-24)

   Further, pursuant to the Federal Tort Claims Act ("FTCA"), this is an action under Ohio law for: (1) malicious prosecution (Count IV) and (2) abuse of process (Count V). (¶ 25). As compared to the complaint, the FAC alleges additional facts critical to understanding the constitutional magnitude of the case, alleges details to address concerns raised in the government's motion to dismiss, and alleges new counts and names new defendants consistent with the new and additional facts.

As alleged in the FAC, Sherry Chen is a naturalized U.S. citizen and from 2007 until 2014, she was employed by the National Weather Service ("NWS") as a hydrologist. (¶¶ 1, 43-48). In 2012, she traveled to China to visit her elderly parents, and while there, at the insistence of her nephew she met with the Vice-Minister for Water Resources, Yong Jiao, who was a classmate, whether he could be of assistance to her family member. (¶¶ 2, 49-50). The meeting lasted for only 15-20 minutes and toward the end of the meeting, Mr. Jiao asked Ms. Chen about her work in the United States and how the federal and local government shared costs to repair aging dams as well as the total water volume in the United States. (*Id.*) Because Ms. Chen was embarrassed that she could not answer these basis questions, she told Mr. Jiao that would look into it when she returned to the U.S. (¶¶ 3, 51).

Upon return to the U.S. she did a quick online search. On May 10, 2015, she accessed the public portion of the National Inventory of Dams website ("NID"), which is a website managed by the United States Army Corps of Engineers ("USACE"), and was not able to find the information needed to answer Mr. Jiao's questions, so she exited the website (*Id.*). Later that afternoon, she realized that the non-public area or restricted area of the website may contain information that would helpful for an official project of hers. (*Id.*) This part of the website required a username and password, which were available in a public binder in her office that was maintained by a co-worker of hers, Ray Davis, and which everyone in the office could access. (¶¶ 3, 72). When asked by Sherry Chen if he knew why NID required a password, Mr. Davis said he did and told Ms. Chen that the information on NID and the password was in the binder in their operational area, then voluntarily provided her with this information in an email and offered to provide her training on the database, which she accepted. (¶¶ 3, 72). During this tutorial, they randomly downloaded a file, "OH," for Ohio dams that Ms. Chen believed would be helpful for

16

her Ohio River forecast modeling work. (*Id*.). Over the course of the next 5 days, Ms. Chen accessed the NID website for practice and downloaded the same document for a second time. (*Id*.) The downloaded document, "OH" related entirely to Plaintiff's work and was completely unrelated to the information that Mr. Jiao sought. (*Id.*)

During the approximate same time period, she also contacted her supervisor, Trent Schade, and Deborah Lee whom she believed could help her answer Mr. Jiao's questions. (¶¶ 4-5, 52). Ms. Chen subsequently sent four emails to Mr. Jiao that provided the information that she believed he was seeking, and directed Mr. Jiao to call the main number where Ms. Lee worked for more information (¶ 53.). However, at no time did Ms. Chen request restricted information from anyone and *all of the information in the emails to Mr. Jiao was entirely public in nature and was not classified, secret or proprietary*. In short, at all times, Mr. Chen provided only publicly available information to Mr. Jiao and in accordance with Ms. Lee's suggestion, directed further questions to the Army Corp of Engineers. (¶ 54.)

Despite the nature of the inquiry and no evidence that Ms. Chen had violated a federal criminal law or a work regulation, one of her co-workers, Defendant Deborah Lee, reported her to the security officer for the USACE. (¶¶ 4, 56-62). Ms. Lee falsely accused this "Chinese national" of seeking sensitive information that would betray U.S. national security interests with the intention of sharing this information with the Chinese government. (*Id*). Based on this false and malicious email, the Department of Commerce Office of Security opened an investigation and sent two agents, Defendants Andrew Lieberman and Mike Benedict, on June 11, 2013, to interview Ms. Chen at her office. (¶¶ 8-9, 74-79). The interview, which was without prior notice, lasted for approximately seven hours and Defendants Lieberman and Benedict ignored exculpatory evidence throughout the interview, reached false conclusions without even a cursory

17

investigation of the underlying facts, failed to accurately record the facts and reported false results reflecting their bias.(¶¶ 8-9, 74-79).

On or about June 3, 2014, Defendant Lieberman completed a Report of Investigation ("ROI") that contained false, misleading and malicious statements that directly led to Ms. Chen's subsequent indictment and arrest by the Federal Bureau of Investigation ("FBI") in October 2014. (¶¶ 9, 74-78, 85-97). There is no evidence that the FBI conducted a separate investigation or sought to confirm the accuracy of the DOC's claims, but instead, the FBI and the United States Attorney's Office simply relied on the unfounded assertions in the ROI. (¶¶ 10, 105-111).

On October 16, 2014, the U.S. filed a four-count Indictment against Ms. Chen. (¶¶ 11, 112). In response to a motion to dismiss filed by Ms. Chen's attorneys which noted the fatal defects in the Indictment, the government filed an eight-count Superseding Indictment that charged Ms. Chen with one count of violating 18 U.S.C. § 641for the alleged misuse of the non-public NID information, two counts of violation 18 U.S.C. § 1030(a)(2) for intentionally accessing the non-public area of the NID database without authorization, five counts of violating 18 U.S.C. § 1001(a)(2) for alleged false statements in connection with her interview by Defendants Lieberman and Benedict on June 11, 2013. (¶¶ 115-116). All of the Counts in the Superseding Indictment were based on the false, biased, misleading, malicious and entirely fabricated, and resulted directly from the actions of Defendants Lieberman and Benedict, both of whom intentionally, knowingly, and recklessly made false statements and representations and material omissions of facts in their reports, affidavits, and communications with the FBI and federal prosecutors, and upon information and belief, in their testimony to the grand jury. (¶¶ 74-78, 85-97).

After a single meeting with Ms. Chen's defense counsel, the United States Attorney's Office, dismissed all of the charges against Ms. Chen without prejudice, (¶¶120-121), which means, according to the United States that it could refile the charges against Ms. Chen until the five-year statute of limitations had run on all of the counts. In this case, according to the government, it had until on or about June 10, 2018, to refile or bring new charges under 18 U.S.C. 1001(a)(2) based on Ms. Chen's alleged false statements to Defendants Lieberman and Benedict.

While the U.S.' dismissal of the charges against Ms. Chen and the subsequent running of the statute of limitations marked the end of Ms. Chen's criminal prosecution by the U.S., it did not end her personal nightmare. Since being arrested and continuing to the present time, the U.S. has sought to make an example of what happens to a Chinese-American who the government believes is not a loyal U.S. citizen, even where such a belief is contrary to the facts and law. Throughout the criminal prosecution, the government sought to create maximum adverse publicity about Ms. Chen and, never attempted to correct the record in the press that Ms. Chen had been accused of spying for the Chinese. (¶¶ 15-18, 123-133), even after stating, in March 2017, that it was "unaware of any evidence that [Ms. Chen] had ever provided secret, classified or proprietary information to a Chinese official or anyone outside." (¶ 149).

Moreover, the U.S. has continued its malicious and vindictive campaign against Ms. Chen by terminating her from her job as a hydrologist on March 11, 2016 (¶¶ 19, 143-147) and, not permitting her to return to work even after a MSPB judge wrote a 135-page opinion exonerating her and criticizing the U.S. (¶¶ 20, 155-154) This scathing decision, comporting with Ms. Chen's Fifth Amendment Due Process rights, should have ended the government's the violation of Ms. Chen's constitutional rights. But it did not.

Instead of complying with this decision, the U.S. is appealing the order and Defendant Desrosiers, on information and belief made the decision on the part of the Department of Commerce to leave Ms. Chen on administrative leave because her "*presence in the workplace would be unduly disruptive*." (¶¶ 21, 160). She nor anyone else in the government provided any other reason, valid or not as why Ms. Chen should be left on this list in face of the Judge's ruling and opinion While the U.S. is required to pay a salary and benefit during Ms. Chen's forced leave because of the judicial decision, Ms. Chen continues to be unable to practice in her profession, unable to restore her reputation, and raises suspicions as to why Ms. Chen should be prevented from returning to her workplace. (¶¶ 21, 161-170). Because there is not a necessary quorum of board members to hear such appeals, there are nearly 2,000 cases, other than Ms. Chen's pending review and another 1,600 waiting for board action. (¶ 157). This means that Ms. Chen's case may not even be heard until 2021 at the earliest. Moreover, it means that the U.S. is depriving Ms. Chen from perhaps ever working again in a position that she loved and did work that benefited the citizens of the U.S.

The government has also treated similarly situated Chinese-American scientists in a very similar manner. For example, Chunzai Wang, who is one of the world's foremost experts on climate change and hurricanes and worked at NOAA laboratory, pleaded guilty to a single count of time and attendance fraud and was sentenced to "time served" (he spent one night in custody when he was arrested. (¶¶ 98-104). The sentencing judge noted "pretrial diversion" would have been a much more appropriate outcome and so as to avoid labeling Dr. Wang a "felon." (¶ 102). Notably, Defendant Lieberman was also responsible for interrogating Dr. Wang and the circumstances of the interrogation are eerily similar to Ms. Wang's. On information and belief, these two cases were the only ones referred to the F.B.I for prosecution by Defendant Lieberman

out of the 48,000 employees at Commerce. In addition, at least three federal criminal indictments of Chinese-American scientists were dismissed prior to trial. (¶ 67).

## III.    ARGUMENT

### A.  Rule 15(a)(2) provides that the Court should give free leave to amend a pleading when justice so requires.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that when a party seeks leave of a court to amend a pleading, "[t]he court should freely give leave when justice so requires." "[T]he Federal Rules … accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis,* 371 U.S. 178, 181-82 (1962). Further, it is well established that interpreting this rule that: "the case law in this Circuit manifests liberality in allowing amendments to a complaint." *Parchman v SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (citation and internal quotation marks omitted); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). This rule and understanding "reinforces the principle that cases 'should be tried on their merits rather than the on technicalities of pleadings." *Inge  v. Rock Finan Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 449 (6th Cir. 1986). Thus:

> "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " *Pitman v. Experian Info. Sols. Inc.* 901 F.3d 619, 640-41 (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

*See also*; *Jang v. Boston Scientific Scimed, Inc.*, 729 F.3d 357, 367 (3d Cir. 2013).

Although the grant or denial of leave to amend is within the discretion of the district court, "outright refusal to grant the leave without any justifying reason appearing for the denial is ... merely abuse of that discretion...." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Further, under Rule 15(a)(2), unless the proposed amended complaint appears"]facially meritless such that the district court's consideration of whether it states an

actionable claim would be an empty exercise" the Sixth Circuit has refused to rule on the sufficiency of the amended complaint. *Morse v. McWhorter*,290 F.3d 795 (6th Cir., 2002). This is in keeping with well-settled law across the circuit that the burden to deny leave to amend is on the non-movant.as the motion is to be liberally granted. *See. e.g. Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004) ("[t]he non-movant generally carries the burden in persuading the court to deny leave to amend."). In addition, this Court has held that the denial of a motion to amend without explanation or justification is an abuse of discretion, *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) unless the reason for the denial of a motion to amend is "readily apparent, particularly in view of the liberal position of the federal rules on granting amendments." *FDIC v. Bates*, 42 F.3d 369, 373 (6th Cir. 1994) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)

Turning to each of these factors—undue delay, bad faith, dilatory motives, failure to cure deficiencies, undue prejudice to opposing party or futility—*in seriatim*:

First, an analysis of the related initial factors – "undue delay," "bad faith," "dilatory motives," "failure to cure deficiencies-" – strongly supports Plaintiff's request to the Court to permit amending her complaint. Plaintiff filed her complaint on January 18, 2019. On April 1, 2019, the parties jointly stipulated pursuant to Local Rule 6.1 to extend the United States' time to respond to the Complaint from April 5, 2019 to April 26, 2019. (ECF # 6.). On May 21, 2019, Plaintiff filed an "Unopposed Motion for Three-week extension of Time to Answer, Move or other Plead in Response to Defendant's Motion To Dismiss." ("Govt's Mot. to Dismiss"). (ECF # 9). The Motion also stated that "[n]o prejudice will result to any party as a result of such time extension." On June 7, 2019, Plaintiff sought to file an amended complaint pursuant to Rule 15(a)(1) of the Federal Rules of Civil, which filing was opposed by the government on June 18,

2019. ("Govt Mot. to Strike") ECF #16. The Defendants also asked for a 60-day extension to respond to the Plaintiff's reply. On August 28, 2019, the Court granted Defendant's motion to strike the amended complaint and denied Plaintiff's motion to amend her complaint as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(B) and *"sua sponte* establish[ed] a deadline of September 18, 2019, by which Plaintiff may file: (1) a motion for leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a)(2); and/or a formal response in opposition to Defendant's motion to dismiss (Doc. 8)."

Accordingly, approximately only eight months have elapsed between the filing date of the original complaint and when the court entered the order permitting Plaintiff to seek leave to file an amended complaint under 15(a)(2). In addition, while unsuccessful, Plaintiff sought to file an amended complaint within five months of filing the original complaint. Regardless, in general, "[d]elay, standing alone, is an insufficient basis for denying leave to amend, and this is true no matter how long the delay." *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 409 (6th Cir. 2000) (citing *Moore v. City of Paducah*, 790 F.2d 557, 559-62 (6th Cir. 1986)

Further, where courts have denied the party's motion to amend a complaint, the delay has been far longer than at issue here and, which often involves another factor supporting denial. For example, in G*reen v. City of Southfield*,925 F.3d 281 (2018), the district court did not abuse its discretion in denying plaintiff's motion to file seventh amended complaint in civil rights action to add additional defendants, where plaintiff had already filed two amended complaints without permission, motion was filed nine months after deadline for amendments, and plaintiff knew about additional defendants from outset of case. This is well-settled law across the circuits. *See e.g.*, *Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011) (denial to amend was based on four-year delay in seeking to amend the complaint after discovery had closed); *Johnson v.*

*Methodist Medical Center of Ill.,* 10 F.3d 1300, 1303 (7th Cir.1993) (affirming denial of motion to amend when district judge found that even if plaintiff's proposed amendment were based on information learned during depositions, plaintiff did not move until four or five months later, and amending the complaint would have meant additional discovery); *Feldman v. American Memorial Life Insurance Co.,* 196 F.3d 783, 793 (7th Cir.1999) (affirming denial of motion to amend based on five-month delay after discovering the facts that allegedly necessitated the amendment); *Perrian v. O'Grady,* 958 F.2d 192, 195 (7th Cir.1992) (affirming denial of motion to amend when plaintiff "ha[d] not explained why he waited [three and a half months]" to add additional defendants).

There is no evidence that Plaintiff seeks to file the PFAC in "bad faith." After promptly filing the complaint she promptly sought to file the PFAC. Similarly, there is no "dilatory motive" on Plaintiff's apart. This is also the first time she has sought to cure any deficiencies or amend the complaint.

Further, Defendant would not suffer "undue prejudice" in the event that the Court permitted Plaintiff to amend her complaint. The court has not entered a scheduling order in this case and discovery has not commenced. Courts are permitted to consider the possibility of real prejudice, but, where, as here, "("[I]f the court is persuaded that no prejudice will accrue, the amendment should be allowed." 6 Charles A. Wright & Arthur R. Miller *et al., Federal Practice and Procedure* § 1487 (3d ed. 2010).

Finally, regarding futility, "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." <u>Rose v. Hartford Underwriters Ins. Co.</u>, 203 F.3d 417, 420 (6th Cir. 2000) In other words, "the district court may deny leave to amend if the proposed amendment would be futile." <u>Moss v. United States</u>, 323 F.3d 445, 476 (6th Cir. 2003).

Here, as stated below in detail, each of the counts would survive a motion to dismiss, so they are not futile. *Rose*, 203 F.3d at 421.

### B. The Bivens Claims Against Defendants Andrew Lieberman, Michael Benedict, Renee Desrosiers, and Deborah Lee Are Not "Futile."

#### 1. Sherry Chen May Pursue Her Bivens Claims

Plaintiff Sherry Chen raises quintessential civil rights claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Specifically, Plaintiff alleges that defendant Andrew Lieberman, the lead case agent, and investigator, and defendant Michael Benedict, violated her Fourth and Fifth Amendments rights through malicious prosecution and fabrication of evidence (FAC ¶¶ 182-186, 193-196) (Counts I, III). Indeed, defendants Lieberman and Benedict's actions—including knowingly and/or recklessly making false statements to the FBI, federal prosecutors and the grand jury that caused Ms. Chen to be indicted without probable cause, and which led to her arrest at work in front of her co-workers and to extensive local and national media coverage in which she was accused "of spying for the Chinese." (¶ 138). Sherry Chen also alleges that Defendants Lieberman, and Benedict, Desrosiers, and D. Lee, violated her Fifth Amendment rights through impermissible racial and ethnic profiling. (¶¶ 187-192), (Count II). Indeed, these are exactly the type of flagrant constitutional violations *Bivens* and its progeny are intended to remedy and deter. The specific allegations at show a pattern of race and national origin discrimination in Commerce that "raise a reasonable expectation that discovery will reveal" circumstantial and specific actual evidence of impermissible discrimination and racial targeting of Sherry Chen that so colored decision making that exculpatory evidence was "buried" or ignored by the Defendants. The *Bivens* allegations

focus on the specific conduct of the defendant individual government workers in violation of the Constitution. *See Bell Atl. Corp. v. Twombly*, 550 U.S at 556, 127 S.Ct. 1955. (2007).

Thus, Plaintiff is not precluded from seeking *Bivens* relief for at least three reasons. First, the Supreme Court in *Ziglar v. Abbasi,* 137 S.Ct. 1843 (2017) reaffirms that citizens may pursue established *Bivens* claims when individual law enforcement agents violate a person's Fourth and Fifth Amendments rights during an investigation, such as the claims asserted by Sherry Chen here. Second, this case does not present a new context. And third, there are no special factors counseling hesitation against providing a *Bivens* remedy.

In *Bivens*, the Supreme Court held that individuals may seek a damages remedy for unlawful search and seizure by federal agents in violation of the Fourth Amendment. 403 U.S. 388. And, in *Davis v. Passman*, 442 U.S. 228 (1979), the Court held that individuals may seek damages for unlawful discrimination in violation of the Due Process Clause of the Fifth Amendment. Since *Bivens*, courts have consistently recognized that individuals may pursue a cause of action against federal agents for Fourth Amendment search and seizure,[2] Fourth Amendment malicious prosecution,[3] Fifth Amendment fabrication of evidence,[4] and Fifth Amendment impermissible discrimination claims.[5]

In *Abbasi,* the Supreme Court stressed, "[t]he settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in

---

[2] *See, e.g., Baranski v. Fifteen Unknown Agents of the BATF,* 452 F.3d 433 (6th Cir. 2006); *Unus v. Kane*, 565 F.3d 103, 122–23 (4th Cir. 2009); *Leveto v. Lapina*, 258 F.3d 156, 159–60 (3d Cir. 2001); *Yopp v. U.S. Dep't of Justice Drug Enforcement Admin.*, No. 10-10118, 2010 WL 3272845, at *6 (E.D. Mich. Aug. 19, 2010); *Thunder Island Amusements, Inc. v. Ewald*, 650 F. Supp. 2d 195, 203 (N.D.N.Y. 2009); *Mueller v. Gallina*, 311 F. Supp. 2d 606, 607–09 (E.D. Mich. 2004).

[3] *See, e.g., Meeks v. Larsen*, 611 F. App'x 277, 282-283 (6th Cir. 2015); *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010); *Hernandez-Cuevas v. Taylor*, 836 F.3d 116, 124-25 (1st Cir. 2016) (*en banc*).

[4] *See, e.g., Webb v. United States*, 789 F.3d 647, 667 (6th Cir. 2015); *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004); *Manning v. Miller*, 355 F.3d 1028, 1030-31 & n.1 (7th Cir. 2004).

[5] *See, e.g., Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

the law, are powerful reasons to retain it in that sphere." 137 S.Ct. at 1857; *see also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001) ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."). *Abbasi*, in short, affirms the "fixed principle" of *Bivens* as a remedy when, as here, a federal agent runs roughshod over a citizen's Fourth and Fifth Amendment rights in a criminal investigation, absent "special factors counselling hesitation in the absence of affirmative action by Congress" 137 S. Ct. at 1857. (quotation and citation omitted). Here, as described below, this case does not present a "new context" for *Bivens* purposes, which ends the analysis, and the court does not need to proceed to determine whether there are special factors counseling hesitation against a remedy. Nothing about Defendants' misconduct makes the context "new" for purposes of *Bivens*. To the contrary, the facts here underscore why *Bivens* remains an essential safeguard to prevent federal agents from overreaching and violating a citizen's basic constitutional rights. Regardless, there are no are no special factors counseling hesitation against a remedy.

In *Abbasi,* the Supreme Court concluded that a challenge to "high-level executive policy created in the wake of a major terrorist attack on American soil" did present a new context, because it was "different in a meaningful way from previous *Bivens* cases …." 137 S. Ct. at 1860. But the Court could not have been clearer that it was not disturbing the core of *Bivens:* claims against a line agent for an unlawful search and seizure and other Fourth and Fifth Amendment violations. See *id*. at 1856–57; *Koprowski v. Baker*, 622 F.3d 248,(6th Cir. 2016) (the purpose of *Bivens* is to deter individual federal officers from committing constitutional violations]; *Malesko*, 534 U.S. at 70, 122 S.Ct. 515*(*2019). "It is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability." *Carlson*, 446 U.S. at 21, 100 S.Ct. 1468 (citation omitted).); *see also*

*Jacobs v. Alam*, 915 F.3d 1026, 1037 (6th Cir. 2019), *Turkmen v. Hasty*, 789 F.3d 218, 265 (2d Cir. 2015) (Raggi, J., dissenting in relevant part) (observing that "the typical *Bivens* scenario" is "errant conduct by a rogue official"), *rev'd in part, vacated in part sub nom. Abbasi*, 137 Sup. Ct. 1843; *Tun-Cos v. Perrotte*, No. 1:17-cv-0943-AJT-TCB, ECF 50 at 12-15 (E.D. Va. April 5, 2018) (rejecting, post-*Abbasi*, that "special factors" required dismissal of plaintiffs' Fourth Amendment unlawful seizure and search and Fifth Amendment equal protection claims against Immigration and Customs Enforcement agents where claims were "not challenging an entity's policy" but were asserting "straightforward violations of their Fourth and Fifth Amendment rights based on the Defendants' conduct" and where agents' "conduct raises the same issues and concerns as in *Bivens*"); *Loumiet v. United States*, No. 12-1130 (CKK), 2017 WL 5900533, at *6 (D.D.C. Nov. 28, 2017) (affirming, post-*Abbasi*, that "the purpose of *Bivens* is to deter misconduct by individual officers" and finding that *Bivens* action was "properly focused on specific activities of individual officers"). *Jacobs v. Alam*, 915 F.3d 1026, 1037 (6th Cir. 2019).

*Abbasi* listed examples of ways in which the "context" of a case might be new. 6 ("For our purposes, *Ziglar* clarifies the analytical framework for how courts must approach asserted *Bivens* claims. The Court defined the "proper test for determining whether a case presents a new *Bivens* context." Id. at 1859. We must ask whether the case is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." Id. at 1859.) None of the examples listed by the Supreme Court apply here. First, the Court observed that the "rank of the officers involved" might make a context new. *Abbasi*, 137 S. Ct. at 1860. Sherry Chen's Fourth Amendment *Bivens* claims do not involve any high-ranking officers, rather, those claims concern only DOC special agents, very similar to the defendants in *Bivens* itself. The *Passman* claims go

to the identical issue of this seminal case of impermissible employment discrimination. The allegations of the Amended Complaint are at the very core of *Bivens* and *Passman*.

Second, the Court noted that the "constitutional right at issue" might make the context new. *Id.* But here, the rights here are the same as in *Bivens* (Fourth Amendment violations committed during a criminal investigation, including malicious prosecution and in *Davis* (Fifth Amendment equal protection violation because of impermissible employment discrimination).

Third, the Court stated that the "generality or specificity of the official action" might make the context new. *Abbasi*, 137 S. Ct. at 1860. Sherry Chen is not challenging a policy or other general official action through *Bivens*. Rather, Sherry Chen's claims against defendants relate to each person's specific misconduct in violation of the Constitution, *i.e.,* malicious prosecution, equal protection and due process rights.

Fourth and fifth, the Court noted that judges should look at the "statutory or other legal mandate under which the officer was operating" and "the extent of judicial guidance" available to officers regarding "how an officer should respond" to the situation. *Id.* That factor plainly does not apply here, as all DOC personnel are necessarily aware that the law prohibits them from engaging in malicious prosecution, falsifying or fabricating evidence, and ethnic profiling.

Sixth, the Court stated that an additional factor was "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Id.* at 1860. The Court stated that "[t]he purpose of *Bivens* is to deter the officer." *Id.* (quotation and citation omitted). In contrast, Court determined that it is a new context, where, a *Bivens'* claim involves calling into question the "formulation and implementation of a general policy." *Id.*

Unlike the claims in *Abbasi*, Sherry Chen's *Bivens* claims against defendants do not remotely present any such intrusion. Those claims do not require an inquiry into the workings of

the Executive branch. Nor do they challenge the DOC's policies or broader efforts that may interfere with the functioning of the Executive branch, for example, preventing officials "from devoting the time and effort required for the proper discharge of their duties." *Id.* Rather, this damages action seeks to hold defendants accountable for their individual actions—actions that included malicious prosecution, fabrication of evidence and racial and ethnic profiling. Holding defendants accountable is no more intrusive than holding the individual agents accountable in *Bivens*—or than holding federal agents responsible in any of the civil rights actions against individual officers pending in federal courts at any given time.

Finally, the Court observed that a new context could arise from other "special factors." *Abbasi*, 137 S. Ct. at 1860. As the Sixth Circuit recognized in <u>*Quigley v. Tuong Vinh Thai*</u>, 707 F.3d 675(2013), "*outrageous conduct will obviously be unconstitutional*"(emphasis added) and the case does "*not need to be on all fours*. Or in the words of the U.S. Supreme Court," O]utrageous conduct will obviously be unconstitutional" without regard to precedent because "the easiest cases don't even arise." *Safford Unified Sch. Dist. No. 1 v. Redding,* 557 U.S. 364, 377, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009) (brackets and internal quotation marks omitted). And even in cases involving less than outrageous conduct, "officials can still be on notice that their conduct violates established law in novel factual circumstances." *Id.* at 377–78, 129 S.Ct. 2633 (ellipses and internal quotation marks omitted).

[T]he "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. "[W]e need not find a case in which 'the very action in question has previously been held unlawful,' but, 'in the light of pre-existing law,

the unlawfulness must be apparent.'" *Comstock,* 273 F.3d at 711 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (brackets omitted). To evaluate the contours of the right, "we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Baker v. City of Hamilton,* 471 F.3d 601, 606 (6th Cir.2006) (internal quotation marks omitted).

l ., ...It is reasonable to assume that a jury could find the conduct of the individual Defendants to be outrageous and shocking the conscience. If so and the Court determines that this case presents a new context, it must then determine whether there is any "alternative, existing process" capable of protecting the constitutional interests at stake, and, even in the absence of such alternative process, whether special factors counsel hesitation before authorizing a *Bivens* remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Here, no such alternative process capable of protecting the constitutional interests at stake. Although Sherry Chen also seeks redress under FTCA, the FTCA is not a substitute for *Bivens*. Rather, the Supreme Court has explained, the FTCA and *Bivens* are "parallel" and "complementary" sources of liability, with *Bivens* providing a "more effective" remedy than that available under the FTCA. *Carlson v. Green*, 446 U.S. 14, 19-20 (1980).

*In short, "plaintiff's Bivens* \claims are the "run-of-the-mill challenges to standard law enforcement operations that fall well within *Bivens itself."J Webb v. United States*, 789 F.3d 647, 659-60, 666-72 (6th Cir. 2015) (discussing the merits of *Bivens* actions for malicious prosecution, false arrest, fabrication of evidence, and civil conspiracy); *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) (discussing merits of *Bivens* action for false arrest); *Burley v. Gagacki*, 729 F.3d 610, 621 (6th Cir. 2013) (explaining plaintiff's burden on motion for

summary judgment in *Bivens* action for excessive force).; see also *Jacobs v. Alam*, 915 F.3d 1026, 1087 (6th Cir. 2019 *(*Discussion of the settled acceptance of Bivens for the above claims in the Sixth Circuit.*)*).

Given this, and the Supreme Court's express caution that *iAbbasi* not to be understood as "cast[ing] doubt on the continued force, or even the necessity, of Bivens in the search-and-seizure context in which it arose," we hew to this "settled law … in th[e] common and recurrent sphere of law enforcement" and find plaintiff's garden-variety Bivens claims to be viable post *Ziglar* and *Hernandez*. 137 S.Ct. at 1856–57." *Id.*

In short, this Court should permit Plaintiff's efforts to permit that the complaint be amended to include Sherry Chen's *Bivens* claims and not permit the government from shielding the egregious and shocking misconduct of the individuals -whose reckless and/or deliberate falsification of evidence caused the wrongful prosecution and abusive treatment of an innocent American citizen.

An American citizen lost her name, her professional life, and faced felony charges because of the constitutional violations of the individual defendants. As the Supreme Court recognized in *Obergefell v. Hodges,*, 135 S. Ct. 2584 (2015)\ "In interpreting the Equal Protection Clause, the Court has recognized that new insights and societal understandings can reveal unjustified inequality within our most fundamental institutions that once passed unnoticed and unchallenged. The Supreme Court has recognized the connection of Due Process and Equal Protection rights."

*Bivens* and *Passman* are essential protections against "unjustified inequality" within our institutions that have passed and gone unnoticed. In the same way that the Supreme Court earlier recognized the unjustified inequality that was accepted in the governmental workplace until

*Passman.* this Court can recognize the unjustified inequality that led to the shocking and unequal treatment of Sherry Chen because she is a Chinese-American scientist. This is exactly the kind of impermissible discrimination that *Passman* is meant to deter.

### Count 1- Malicious Prosecution—Defendants Lieberman and Benedict

The courts have uniformly held that where a law enforcement agent intentionally, knowingly, or recklessly provides materially false information to a prosecutor who then uses that evidence to establish probable cause for a prosecution (by arrest, indictment, or preliminary hearing), the Fourth Amendment provides a claim for malicious prosecution and all the harms that flowed from that prosecution.*e Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir. 2010) (*quoting Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006); *Dufort v. City of New York*, 874 F.3d 338, 351 (2d Cir. 2017) (claim of malicious prosecution sustained where officer placed plaintiff in defective lineup and withheld the suspect nature of an "identification" from prosecutors); *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (falsification of scientific evidence relating to hair analysis states claim for malicious prosecution; factual allegations more than conclusory in nature); *Miller v. Maddox*, 866 F.3d 386, 389, 588 (6th Cir. 2017) (plaintiff need only show that officer "influenced[] or participated in the prosecution decision"; officer who provides false information is liable for malicious prosecution and issuance of indictment secured on the basis of that information does not provide defense); *King v. Harwood*, 852 F.3d 568, 583-84 (6th Cir. 2017) (same); *see also Black v. Montgomery Cnty.*, 835 F.3d 358, 372 (3d Cir. 2016) (false and omitted allegations in affidavit of probable cause regarding scientific facts as to point of origin of fire negated probable cause for arrest); *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015) (omissions in evidence presented to prosecutor in support of accusations of financial fraud were

material and thereby false, and led to a prosecution without probable cause); *Halsey v. Pfeiffer*, 750 F.3d 273, 289 (3d Cir. 2014) (falsifying confession states claim for malicious prosecution).

To succeed on a *Bivens* claim for malicious prosecution, a plaintiff must demonstrate that: (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was lack of probable cause for the prosecution; (3) the plaintiff suffered a deprivation of liberty beyond the initial seizure, as a result of the criminal proceeding, and (4) the criminal proceeding was resolved in plaintiff's favor. *Sykes*, 625 F.3d at 308-09. Turning now each of these elements, *in seriatim*.

(1) That Plaintiff had made a request for information that was clearly outside the scope of her official duties, and the request had been made in response to a prior request purportedly made by "Chinese colleagues;" (2) That on May 10, 2012, a coworker sent an email to Chen containing his NID credentials and password via official NOAA email and Chen never had authorization from USACE or her NOAA supervisor to access the NID. (3) Failed to disclose that Ms. Chen, had authorization to download the file she downloaded from the NID on May 10, 2012 and May 15, 2012; (4)That Plaintiff never obtained proper authorization from her NOAA supervisor to access the NID; and (5) suggested that Ms. Chen had provided sensitive and proprietary information from the NID database to Mr. Jiao.

Turning now to the next element of probable cause, a, the Indictment and Superseding Indictment were entirely a direct result a direct result of defendant Lieberman and Bennett's actions in intentionally, knowingly, and/or recklessly making false statements and representations and material omissions of facts in their reports, emails and other communications with the FBI and the federal prosecutors.

Further, Defendants Lieberman and Benedict unquestionably shared this information with the FBI and federal prosecutors, who failed to conduct a further investigation and relied on defendants Lieberman and Benedict false statements and misrepresentations, and material omissions that directly caused the grand jury to indict Plaintiff. For example, the date of search warrant application that the FBI Special Agent filed with the United States District Court for the Southern District of Ohio, and served on Yahoo on June 12, 2014, was only two days before when Lieberman and Benedict's ROI was finalized. This timing suggests that Lieberman and Benedict collaborated with the FBI Special Agent on the search warrant application facts. Moreover, the facts in the application repeated the following intentional, knowing and/or reckless false statements and representations and material omissions made by defendants Lieberman and Benedict:

Without such falsities there would have been no probable cause[6]

Turning now to the liberty interest, Sherry Chen lost her name, her reputation and her work. It is well-settled that her liberty interest is protected and hence, this element is satisfied. As the Sixth Circuit recognized in *Bacon v. Pagera*, 772 F.2d 259,. 263 (1985):

> [T]the scope of liberty not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge .. and generally to enjoy those privileges long recognized.. as essential to the orderly pursuit of happiness by free men. Id. at 572, 92 S.Ct. at 2706–07. Although later Supreme Court cases would somewhat narrow the definition of liberty interest, see *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684

---

[6] It is reasonable to assume that discovery wil show that the predisposed bias towards Sherry Chen as a "suspicious foreigner" was so great that law enforcement agents knew through their own investigation that there was no evidence of Sherry Chen providing any sensitive or secret information to any foreign agent. Hence, determined to prosecute Sherry, the defendants chose to focus on the use of the "pooled password,"a lesser charge and one that they may have known even before they were informed by Sherry's coworker Ray Davis that it was a "pooled password," that they were going to selectively prosecute Sherry Chen on that charge. This pretextual prosecution , when applied to one group because of their race and national origin is antithetical to Constitutional rights on so many levels. Daniel C. Richman & William J. Stuntz, Al Capone's Revenge: An Essay on the Political Economy of Pretextual Prosecution, 105 COLUM. L. REV. 583, 583 (2005)

(1976), the Supreme Court has consistently recognized that the due process clause forbids arbitrary deprivation of liberty "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)). Even in *Paul v. Davis*, where the Supreme Court refused to allow a section 1983 claim based upon injury to reputation, the Court recognized that if the damage to reputation was combined with a tangible injury such as loss of employment, a section 1983 claim could be alleged. *Paul v. Davis*, 424 U.S. at 701, 96 S.Ct. at 1160–61.

In this case as in *Bacon*, Sherry Chen lost her employment as a direct result of the malicious prosecution of the Defendants Benedict and Lieberman. Ms. Chen also lost her reputation, was arrested, banned from entering her office, and even her passport was confiscated. Thus, she has more than met the requirement that a protected liberty interest was infringed.

Courts have consistently sustained complaints on factual allegations less specific than those alleged in the FAC.[7] <u>Koprowski v. Baker</u>, 622 F.3d 248,— (6th Cir. 2016). *See also Schuchardt v. President of the United States*, 839 F.3d 336, 353 (3d Cir. 2016) (standing to sue for illegal NSA surveillance established by allegation that popular media had reported that the NSA program monitored all users of certain websites and technologies used by plaintiffs); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (claim that plaintiff was discriminated against on basis of gender sustained on allegations that she was the only driver not rehired, was the sole woman driver, and was qualified to drive); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009) (claim under Rehabilitation Act sustained on allegations that following injury on job, employer "regarded her as disabled" and she was not transferred to a position that could accommodate her disability); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224,

---

[7] The Supreme Court, in A*scroft v. Iqbal* 129 S.Ct. 1937, 1949 (2009), established a "plausibility: standard of pleading. However Rule 8 of the Federal Rules of Civil Procedure remain firmly in place. That rule does not require "detailed factual allegations: but simply requires that the plaintiff produce more than an unadorned the-defendant-unlawfully -harmed-me accusation." Howard v. City of Gerard, Ohio ,346 F. App'x49,50 (6th Cir. 2009)citing B*ell-Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

243 (3d Cir. 2008) (sustaining complaint of failure to protect since facts alleged are more than a simple "blanket assertion" of entitlement to relief); see also *Olson v. Champaign Cnty.*, 784 F.3d 1093, 1101-02 (7th Cir. 2015) (specific allegations that police investigation failed to produce evidence of wrongdoing and that warrant was based on false statements sufficient to state Fourth Amendment claim).

In sum, Sherry Chen has alleged facts with sufficient detail and particularity that plausibly show that the individual defendants engaged in a malicious prosecution. The Court should grant Plaintiff's motion under Rule 15(a)(2) with respect to this Count.

### Count II - *Equal Protection—Defendants Lieberman, Benedict, and Desrosiers*

The FAC also adds claims against Lieberman, Benedict, and Desrosiers and Does for equal protection violations under the Fifth Amendment. The specific paragraphs in the FAC alleging discrimination based on race and ethnicity (¶¶ 25, 58-69, 99-105, 154,), must be evaluated not only with respect to the other criminal cases cited therein where criminal indictments against three other Chinese-American scientists were dismissed based on a failure of proof, but also with respect to the extraordinary misconduct alleged as to defendants Lieberman and Benedicts' investigation and the patently and outrageous treatment of Sherry Chen by Lee, Desrosiers and Does.

The investigation was predicated on the notion that Sherry Chen, as a Chinese-American scientist working for the National Weather Service must have been asking for information about dams in the United States for an illicit purpose. At this junction in the proceedings, there is nothing else to explain why defendants Lieberman, Benedict and Desrosiers would so thoroughly and blatantly misrepresent the evidence and fail to undertake the most basic investigative steps that would have avoid the false allegations in the Indictment and the Superseding Indictment and

precluded Sherry Chen's prosecution. Thus, there are not only allegations for racial or ethnic hostility to her, but conduct entirely consistent with the hostility and discriminatory intent, and a larger pattern of conduct with other Chinese-American scientists.

Sherry Chen has the burden to allege facts sufficient to show intentional discrimination, but the law is also clear that circumstantial evidence is sufficient to show discriminatory intent at trial, much less at the motion to dismiss stage. For example, in *Pitts v. State of Delaware*, 646 F.3d 151 (3d Cir. 2011), the Third Circuit affirmed a jury verdict finding an equal protection violation where the defendant police officer arrested plaintiff in circumstances that suggested racial bias. In *Pitts*, the defendant officer responded to a call concerning a fight between two men, one black and one white. The officer arrested the black man (plaintiff Pitts) at the scene, and later also filed an affidavit of probable cause for the arrest of the white man. The Court sustained the intentional race bias claim on the grounds that the officer (1) inaccurately reported critical facts regarding the incident, (2) did not properly investigate the case before arresting the plaintiff, (3) filed charges not supported by the evidence, and (4) provided far more details against Pitts than the other participant. Here, defendant engaged in even more serious misconduct, as they fabricated evidence and provided knowingly false information to prosecutors. In *Pitts*, there was a dispute regarding who instigated the fight and who may have been engaged in criminal conduct, while in the case at bar there was no evidence supporting criminal charges against Sherry Chen.

### Count III- Bivens Fabricating Evidence —*Defendants Lieberman and Benedict*

"[T[hat a State may not knowingly use false evidence" is "implicit in any concept of ordered liberty." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). See also *United States v. Agurs*, 427 U.S. 97, 104 (explaining that perjured testimony "involve[s] a corruption of the truth-

seeking function of the trial process."). Thus it is well established that there is an independent claim under the Due Process Clause of the Fifth Amendment for fabrication of evidence and this claim is not subsumed in the Fourth Amendment malicious prosecution cause of action. G*regory v. City of Louisville,* 444 F.3d 725, 737 (6th Cir. 2006)" (It is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Supurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999) ("[A] reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures.")

The basis of a fabrication-of-evidence claim under § 1983 is an allegation that a defendant knowingly fabricated evidence against a plaintiff, and the false evidence could have affected the judgment of the jury." *Mills v. Barnard,* 869 F.3d 473, 484 (6th Cir. 2017) (quotation omitted). In *Black v. Montgomery*, 835 F.3d 358, 369, (3d Cir. 2016), the court stated that a "stand-alone fabrication of evidence can proceed [even] if there is no conviction, "notwithstanding an independent Fourth Amendment claim of malicious prosecution. Further, in *Halsey v. Pfeiffer*, 750 F.3d 273, 288-96 (3d Cir. 2014) the court found that this rule has been adopted by every court of appeals to have considered the questions. (citing *Washington v. Wilmore*, 407 F.3d 274, 283 (4th Cir.2005) (holding that a conviction and incarceration resulting from fabricated evidence may violate due process); *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir.2004) (observing that actions involving fabricating evidence and framing individuals "necessarily violate due process"); W*ilson v. Lawrence Cnty.,* 260 F.3d 946, 954 (8th Cir.2001) ("If officers use false evidence, including false testimony, to secure a conviction, the defendant's due process is violated."); *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir.2001) (en banc) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal

charges on the basis of false evidence that was deliberately fabricated by the government.");
*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir.1997) ("Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable.. [violation of due process.]"); U*nited States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir.1989) ("The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."). See also *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 278 (2d Cir. 2016).

Here, the PFAC alleges that D. Lee made false accusations and fabricated evidence in her email about Plaintiff that directly led to the opening of a counterintelligence and criminal investigation against her. On information and belief, after an investigation that failed to support D. Lee's outrageous and nefarious allegations, a pre-textual prosecution was launched on the lesser charge of misuse of a password, a charge that could nonetheless have cost Ms. Chen her freedom and labeled her a felon, with malicious intent, Defendants Lieberman and Benedict did manufacture and intentionally misrepresent evidence against Ms. Chen and failed to disclose exculpatory evidence in their drafting and presentation of the inaccurate and false ROI. Accordingly, Sherry Che states a valid claim under the Fifth Amendment for the fabrication of evidence.

### 2. *Plaintiff's Bivens' claims are not barred by the statute of limitations*

The government argues in its <u>Motion to Strike Amended Complaint & Response To Plaintiff's Motion For Leave To Amend the Complaint As A Matter Of Right </u>("Mot. to Strike") that Plaintiff be denied the right to file an Amended Complaint on the grounds that "many, if not all, of the proposed amendments would be futile" because "the statute of limitations expired, at

the latest on March 11, 2017—two years after the district court dismissed the indictment and terminated the criminal proceeding." Mot. to Strike at 7. The government further claims "that the two-year statute of limitations for *Bivens* malicious prosecution claim begins to run when charges are dismissed." *Id.* However, in the government's <u>Motion to Dismiss</u> ("Mot. to Dismiss"), the government took the position that because the charges were dismissed by the United States Attorney's Office without prejudice, it was "not "final disposition" indicating that Ms. Chen was innocent and that the criminal charges against her could be refiled by the government at a later date. In other words, the government is maintaining on the one hand that the running of the statute of limitations begins when charges are dismissed, regardless of whether they could have been refiled by the government, and on the other hand, dismissal without prejudice that permits the refiling of criminal charges does not constitute an unconditional dismissal or support a later claim for malicious prosecution. The government cannot have it both ways. As explained below based on the government's statements and federal law, the statute of limitations should begin to run in the present case on the date of when the statute of limitations tolled on all of the criminal counts in the underlying case on June 10, 2018, which means that Ms. Chen has until June 9, 2020, to bring her *Bivens'* claims.

Further, the Supreme Court in *McDonough v. Smith*, U.S., 139 S.Ct. 2149 (2019), determined that the statute of limitations begins to run in a federal § 1983 fabricated evidence claim "does not begin to run until the criminal proceedings against the defendant (*i.e.,* the § 1983 plaintiff) have been terminated in his favor."[8] *Id.* at 2154-55. According to the Court and explained by *Heck v. Humphrey*, 512 U.S. 477 (1994), "malicious prosecution's favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil

---

[8] The Court noted "that malicious prosecution is the most analogous common-law tort here." *Id.*at 2156.

litigation over the same subject matter and related possibility of conflicting civil and criminal judgments." *Id.* at 2156-57. Also citing *Heck*, the *McDonough* Court stated that this "favorable-termination requirement … applies whenever 'a judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid." *Id.* at 2157 (*quoting Heck*, 512 U.S. at 487).

Here, the government takes the position that a favorable determination did not occur when the USAO dismissed the claims without prejudice because the government could still have refiled the claims against Plaintiff, and "was not an adjudication in Plaintiff's favor on the merits that absolved her of any wrongdoing. First, this final disposition in no way indicated that Plaintiff was innocent of the charges … Second, because the dismissal was without prejudice, it was not an unconditional, unilateral dismissal or an abandonment of the prosecution." Mot. to Dismiss at 7-8. Pursuant to this understanding and the Supreme Court's reasoning and analysis in *McDonough* and *Heck*, does not begin to run until the proceedings against Plaintiff in her favor, which could only have occurred in this matter when the statute of limitations begin to run on the latest date that the government could have refiled at least one of the counts against Plaintiff.

In this case, the government alleged in the Superseding Indictment that Ms. Chen violated 18 U.S.C. § 1001(a)(2) five times by making false statements on June 11, 2013, to defendant Lieberman. According to 18 U.S.C. § 3282, "a prosecution for a non-capital offense shall be instituted within five years after the offense was committed." Thus, the government had until June 10, 2018, to seek a new indictment against Ms. Chen and refile these counts. Because the government failed to do so, and only abandoned the prosecution, as of that date, Ms. Chen has until June 9, 2020 to bring *Bivens* claims in the instant case.

Further, in *Mills v. Barnard*, 869, F.3d 473 (6th Cir. 2017), the Sixth Circuit concluded that the statute of limitations does not begin to run on a § 1983 action "until the grant of the prosecution's *nolle prosequi* motion … which terminated the criminal proceedings." *Id.* at 484. In other words, when the prosecutor gave a formal notice of abandonment in a court record of the criminal proceeding. Here, the government admitted that it did not formally abandon the prosecution against Plaintiff when it filed the notice of dismissal because it was without prejudice and the court could have refiled the charges. The government only actually abandoned the case against Ms. Chen when the statute of limitations rans on the underlying criminal counts.

In addition, this conclusion is strongly supported by the reasoning in *McDonough,* in which the Court soundly disagreed with the Second Circuit's *McDonough* approach that the statute of limitations begins to run "as soon as [criminal defendants] bec[a]me aware that fabricated evidence has been used against them." *Id.* at 2158. Apart from creating "practical problems in jurisdictions where prosecutions regularly last nearly as long –or even longer than— the relevant civil limitations period," the Court found that this approach would present "[a] significant number of criminal defendants" with "an untenable choice between (1) letting their claims expire and (2) filing a civil suit against the very person who is the midst of prosecuting them." *Id.*58. The Court concluded that the approach taken by the Second Circuit, while offering certain advantages would "not overcome the greater danged that plaintiffs will be deterred [under the second factor] … from suing for redress of egregious misconduct,." *Id.* at 2161.

Here, under the government's position, the Plaintiff would have had to file her *Bivens* claims before June 10, 2018, when the statute of limitations ran on the underlying criminal counts pursuant to 18 U.S.C. § 3282. In other words, Plaintiff would have been required to bring her *Bivens* claims against the very same defendants that were responsible for her malicious

44

prosecution and racial profiling. Thus, Plaintiff could have been in a very similar position to the defendant in *McDonough* by filing a civil suit against persons who could have been involved in her prosecution in the event that the United States decided to refile the counts against her, which by its admission it could have done. While it could be argued that this argument is too tenuous to be possible, there can be doubt that persons in the position of Plaintiff would likely be deterred from filing suit and should not have to make this "untenable choice."

This understanding is also consistent with the Court's *Heck* holding that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, 1 C. Corman, Limitation of Actions § 7.4.1, p. 532 (1991); *Carnes v. Atkins Bros. Co.,* 123 La. 26, 31, 48 So. 572, 574 (1909), *Heck*, 512 U.S. 487.

In each of these situations cited by the *Heck* court, the conviction or sentence was final, and could not have been challenged by the state, and more importantly the government was legally barred from refiling the charges. Indeed, the government would have been prohibited from bring refiling charges against such defendants by the Fifth Amendment of the Constitution of the United States that provides" "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb …." In contrast, the government has recognized that it could

have refiled the charges against Plaintiff, which means that the dismissal of the count against

Plaintiff was not final until the statute of limitations had run on all the underlying criminal

counts.

Accordingly, Ms. Chen is not barred by the statute of limitations to bring the *Bivens*

claims set forth in the amended complaint and the assertion of such claims is not futile.

### 3. *Defendants are not entitled to qualified immunity*

Defendants Lieberman, Benedict, D. Lee, and Desrosier are not entitled to a defense of

qualified immunity on Plaintiff's federal constitutional claims for the following reasons: (1) the

FAC pleads facts plausibly showing that Sherry Chen was subjected to a malicious prosecution,

that defendants Lieberman, Benedict, and D. Lee fabricated evidence against her, and that

defendants Lieberman, Benedict, D. Lee, and Desrosiers impermissibly targeted her based on her

race and ethnicity; and (2) these constitutional violation were clearly established at the relevant

time. *Mullins v. Cyranek,* 805 F.3d 760 (6th Cir. 2015) (two prong test in the Sixth Circuit

determine whether an law enforcement agents entitled to qualified immunity from civil liability:

(1) whether the facts, when taken in the light most favorable to the party asserting the injury,

show the agent's conduct violated a constitutional right; and (2) whether the right violated was

clearly established such that a reasonable official would understand that what he is doing violates

that right.

The first prong is met in the Amended Complaint by the allegations that the Defendants

Lieberman and Benedict who intentionally, knowingly, or recklessly provides false, misleading

or fabricated evidence to support a criminal prosecution or to secure a search warrant has

qualified immunity from suit. In addition,  as the Cardozo Law Review points, out the entire

approach of conducting the investigation is constitutionally suspect. , Andrew King,

"Prosecuting Spies: An Empirical Analysis of the Economic Espionage Act," Cardozo Law Review (301*), http://cardozolawreview.com/prosecuting-chinese-spies-an-empirical-analysis-of-the-economic-espionage-act/ (2) The rights violated were the basic rights to a fair investigation that a reasonable official would understand needed to be followed. [9]

Finally, qualified immunity is not a defense simply because the precise facts that establish the malicious prosecution, fabrication of evidence, or arrests or searches without probable cause in a particular case are different from those in previously decided cases. As the court in *Morse*, 804 F.3d at 550, stated:

> Although there is no prior decision of ours precisely equating the fraudulent omission of factual information from a document with the affirmative perpetration of a falsehood, Ricciuti and its progeny, including Zahrey, clearly establish that 'qualified immunity is unavailable on a claim for denial of the right to a fair trial where that claim is premised on proof that a defendant knowingly fabricated evidence and where a reasonable jury could so find.'. . . As discussed in detail above, because there is no plausible legal distinction between misstatements and omissions that we can perceive in this context, we conclude that it was not 'objectively legally reasonable' for the defendants in this case to believe that it was permissible for them to knowingly make material omissions in the creation of the billing summaries, thereby knowingly altering evidence during a criminal investigation.

*See also, Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances*."); Schneyder v.*

---

[9] This is well-settled law. *See e.g., Andrews v. Scuilli,* 853 F.3d 690, 705 (3d Cir. 2017) (("We need not dwell on [the question of whether the rights at issue were clearly established at the time] . . . the right to be free from arrest except on probable cause, was clearly established at the time . . . the right to be free from prosecutions on criminal charges that lack probable cause was also known and clearly established at the time") (internal quotation marks and citations omitted); *Miller*, 866 F.3d at 395 (arrest and detention based on false pretenses violates clearly established law); *Dufort*, 876 F.3d at 354 (same); *Humbert v. Mayor and City Council of Baltimore City*, 866 F.3d 546, 556-57, 561-62 (no reasonable basis for officer to believe that there was probable cause for an arrest based on the "emotional" reaction of a witness to suspect's photo without an actual identification; "allegations of falsity or material omissions" sufficient to defeat immunity argument).

*Smith*, 653 F.3d 313, 330 (3d Cir. 2011); *Sterling v. Borough of Minersville*, 232 F.3d 190, 197 (3d Cir. 2000).

Claims of malicious prosecution, fabrication of evidence, or falsification of facts in support of the indictment will invariably present unique facts, but the unifying theme that defeats qualified immunity in these cases is proof of the defendants' intentional, knowing, or reckless material representations. Given Sherry Chen's extensive pleading demonstrating such conduct, defendants are not protected by qualified immunity.

## C. The FTCA CLAIMS AGAINST DEFENDANT UNITED STATES

It has long been established that FTCA claims can be brought alongside Bivens, and *Carlson v. Green*, 446 U.S. 14, 19-20 (1980). .The same misconduct of the Defendants renders the Defendant United States liable under the FTCA for the injuries to Sherry Chen.

Hence, the followings claims for malicious prosecution and abuse of process are brought under the FTCA, the validity of each of these claims will be evaluated under Ohio law. Turning to each of these claims in order:

### 1. Malicious Prosecution (Count IV)

Under Ohio law, a claim for malicious prosecution requires the following: (1) a maliciously instituted prior proceeding by the defendant; (2) lack of probable cause for filing the prior action; and (3) "prosecution in favor of the accused."[10] *Voyticky v. Village of Timberlake Ohio*, 412 F.3d 669, 675-76 (6th Cir. 2005) (quoting *Trussell v. General Motors.*, 53 Ohio St.3d 142, 559 N.E.2d 732, 736 (1990).

---

[10] There is no qualified immunity defense to claims under the FTCA. *Castro v. United States*, 34 F.3d 106 (2d Cir. 1994).

As, the argument here is essentially the same as to whether Plaintiff amend her complaint to add a claim for malicious prosecution against Defendants Lieberman and Bennett under *Bivens,* Plaintiff hereby incorporates her arguments made above. The FAC alleges specific false representations and material omissions of fact that defendants Lieberman and Bennett intentionally, knowingly, and recklessly communicated to the FBI and federal prosecutors and which caused United States Attorney's Office for the Southern District of Ohio to seek the Indictment and Superseding Indictment. There false representations were repeated before the grand jury, and these false representations were in the Indictment and Superseding Indictment. The United States moved to dismiss the malicious prosecution claim under the FTCA on the grounds that "under Ohio law, an indictment of the accused by a grand jury is *prima facie* evidence that there is probable cause for the prosecution, …" (Memo. at 11.), and that the facts alleged in the complaint failed to rebut the presumption established by the indictment. However, any presumption of probable cause based on the Indictment is rebutted when the defendants knowingly presented false testimony to the grand jury to obtain the indictment, *Martin v. Maurer*, 581 F. App'x 509, 511 (6th Cir. 2014), or testified with a reckless disregard for the truth, the understanding with respect to a grand jury does not apply *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014); *see also Rentas v. Ruffin,* 816 F.3d 214, 220 (2d Cir. 2016) (presumption of probable cause rebutted if indictment was obtained "'by wrongful acts on the part of the police,' including 'fraud, perjury, [or] the suppression of evidence'" (quoting *McClellan v. Smith,* 439 F.3d 137, 145 (2d Cir. 2006))*.*

With these factual allegations, the FAC sufficiently alleges that the Indictment and Superseding Indictment were obtain through Defendants Lieberman and Bennett's false representations to the prosecutor, as evidenced by the false testimony that was presented to the

grand jury. These allegations, therefore, are suffice to rebut any presumption of probable cause arising from the return of the Indictment and Superseding Indictment. The Court should grant Plaintiff's motion to amend her complaint with respect to the malicious prosecution claim the United States and reject the government's proposal to dismiss this Count.

        2.  *Abuse of Process (Count V)*

     The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. See e.g*., Voyticky v. Village of Timberlake Ohio*, 412 F.3d 669 (6th Cir. 2005). Putting aside, the first and third elements which have been discussed in great detail above., Plaintiff has sufficiently alleged in the PFAC that with regard to the second element "that the proceeding has been perverted to attempt to accomplish an ulterior motive for which it was not designed."

     Here, the ulterior motive of the United States was to seek and obtain the conviction of Plaintiff, a Chinese-American scientist in order to seek the ulterior purpose of prosecuting Chinese-Americans on the basis of their nationality and ethnicity. At this stage of the proceeding there can be no other explanation consistent with the facts that the United States would have sought to prosecute Plaintiff other than based on her race and ethnicity. In addition, the government's decision to subject Plaintiff to extended leave during the appeal , by now a "de facto" firing without due process, also is consistent  with the government's biased treatment of a distinguished and award-winning scientist as if she was and is  the "suspicious foreigner," the spy, who cannot even be trusted to walk inside the Wilmington weather bureau. Certainly, at this stage of the proceeding there can be no other explanation.

**Statute of Limitations**

The United States also asserts that the FTCA Counts should be dismissed because under Ohio law, the statute of limitations for malicious prosecution and other claim under the FTCA begins to run when the prosecution has been terminated "in favor" of the accused. Here, the government has admitted that the prosecution was not terminated in favor of Plaintiff at the time the United States Attorney's Office dismissed the claims because the dismissal was without prejudice. Thus, as shown above, the prosecution was terminated "in favor" of Plaintiff on June 10, 2018, when the statute of limitations ran on all of the underlying criminal counts and the United States was barred from seeking to refile the charges against Ms. Chen. This understanding is consistent with the meaning of terminated "in favor" of Plaintiff under Ohio law.

The issue of the meaning of this term was addressed in greatest detail in *Ash v. Ash*, 72 Ohio St.3d 520, (1995). Therein, the Ohio State Supreme Court determined that "[a] proceeding is "terminated in favor of the accused" only when it's final disposition indicates that the accused is innocent. *Id.* at 522 (quoting 3 Restatement of the Law 2d, Torts (1977) 420, Section 660, Comment a). Thus, according to the Court, "an unconditional, unilateral, dismissal of criminal charges or an abandonment by the prosecutor of the complaining witness generally constitutes a termination in favor of the accused." *Id.* In contrast, the court cited that "a prosecution that is terminated by reason of a voluntary settlement or agreement of compromise with the accused is not indicative of guilt or innocence in favor of the accused." *Id.* The Court concluded because in that case the plaintiffs, as well as the prosecutors gave up something to effectuate the settlement

the secure [the] dismissal" and "dismissal of the charges was not unilateral," the action did not terminate in favor of the plaintiff.[11] *Id.*

Further, as noted above the 6th Circuit determined that the statute of limitations does not begin to run until the prosecutor formally abandoned the criminal proceedings. *Mills v. Barnard*, 869, F.3d 473 (6th Cir. 2017) (applying Tennessee law). Here, the government admitted that it did not formally abandon the prosecution against Plaintiff when it filed the notice of dismissal because it was without prejudice and the court could have refiled the charges. The government only actually abandoned the case against Ms. Chen when the statute of limitations ran on June 10, 2018 on the underlying criminal counts. Accordingly, Plaintiff had two-years from that date to bring charges against the United States, which she has done.

## IV.    CONCLUSION

For the reasons stated above, the Court should grant Plaintiff's motion to amend the complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

(SIGNATURES ON NEXT PAGE)

---

[11] In *Froehlich v. Ohio /Dept. of Mental Health,*114 Ohio St. 3d 286, 288 (2007), the Ohio Supreme Court determined that the statute of limitations began to run in that matter when the grand jury returned a "no-bill" in favor of the plaintiff in the underlying criminal action. This despite that the fact because the grand jury returned a "no - bill" finding, Ohio could have refiled the charges at any time prior to the running of the statute of limitation. Regardless, this means that *Froehlich* should be limited to where a jury makes a finding of "no bill" or that the Ohio Supreme Court intended to limit the scope or overturn *Ash*.

(SIGNATURES ON NEXT PAGE)

Respectfully submitted,

/s/ Michele L. Young (0062011)
Trial Attorney for Plaintiff
Michele L. Young Co., LPA
8525 Given Road,
Cincinnati, OH 45243
Tel: (513) 617-9152
michele@michelelyounglaw.com

Peter Toren – Member NY, DC, and
CA Bars (admitted pro hac vice)
3028 Newark Street, NW
Washington, D.C. 20008
Tel: (646) 623-4654
ptoren@petertoren.com

## CERTIFICATE OF SERVICE

I certify that a true copy of the Motion to Amend the Complaint and Memorandum in

Support was filed electronically on September 23, 2019 using the Court's CM/ECF system, which

will serve notice of this filing on all counsel of record.

s/ Michele L. Young
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2019, a copy of the [Proposed] Order was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

s/ Michele L. Young
Attorney for Plaintiff

Respectfully submitted,

/s/ Michele L. Young (0062011)
Trial Attorney for Plaintiff
Michele L. Young Co., LPA
8525 Given Road,
Cincinnati, OH 45243
Tel: (513) 617-9152
michele@michelelyounglaw.com

Peter Toren – Member NY, DC, and
Cal Bars (admitted pro hac vice)
3028 Newark Street, NW Washington, D.C. 20008
Tel: (646) 623-4654
ptoren@petertoren.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2019, a copy of the [Proposed] First Amended Complaint was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

s/ Michele L. Young
Attorney for Plaintiff