UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| XIAFEN "SHERRY" CHEN | : | Case No. 1:19-CV-00045 |
| **Plaintiff,** | : | |
| vs. | : | District Judge Timothy S. Black |
| UNITED STATES OF AMERICA | : | |
| **Defendant.** | : | |

**PLAINTIFF SHERRY CHEN'S MOTION TO EXTEND THE STAY FOR 120 DAYS AFTER THE PUBLICATION OF THE SENATE COMMITTEE REPORT AND TO TAKE JUDICIAL NOTICE OF THE ATTACHED EXHIBITS**

I. INTRODUCTION

The Investigations and Threat Management Service (ITMS) of the Department of Commerce "mutated into a rogue, unaccountable police force without a clear mission." In one instance, the ITMS investigated a Chinese-born scientist employed at the Department on charges of espionage, interrogating her for hours and drafting a criminal referral to federal prosecutors. Officials ultimately insufficient evidence after she was arrested and dropped all criminal charges." [Sherry Chen], Fact Sheet of Senator Roger S. Wicker, (ranking member of the Senate Committee on Commerce, Science and Transportation, (May 14. 2021)

Plaintiff Xiafen (Sherry) Chen respectfully moves this Court to stay this matter for 120 days after the publication report by Sen. Roger Wicker (R-Miss.) detailing abuses by the ITMS, that investigated and led to the illegal prosecution of Sherry Chen.

As the Court is aware, Plaintiff previously filed a Motion to Stay the Proceedings (Doc. 32) as "Plaintiff anticipates that her attorneys may come into possession and that could have a great impact on the Court's decision on whether to grant the government's pending motion."

With only what is known and should be taken notice of, Plaintiff is already ready to plead with particularity a set of allegations which are not only actionable but may overcome any defense of sovereign immunity. In a matter of days, further evidence is to come to light to bolster

Plaintiff's claims as the Senate publishes its report. But Plaintiff has now learned of other investigations that may shed light on Plaintiff's claims. Commerce is now conducting its own investigation into the "rogue" police force in response to Senator Wicker's allegations of a lack of cooperation. Representative Jamie Raskin (D-Md.) is investigating the persecution of Asian-American scientists. More whistleblowers have come forward.

With these facts and through discovery, Plaintiff will be able make out a case that will set precedent when everyone learns of anti-Asian bias. This request allows this Court to consider this case on the merits.

In support of the requested stay, Plaintiff provides the Court with the first facts that have come into Plaintiff's possession showing the need and information for the Court to grant the relief sought by Plaintiff.

The three attached exhibits provide facts that go to the heart of this case as the criminal investigation of Sherry Chen was outside the law. It was this investigation by ITMS agents that directly formed the grounds for Sherry's unwarranted prosecution by the U.S. Attorney for the Southern District of Ohio. Indeed, without this illicit investigation, the U.S. government would have had no evidence on which to seek Sherry's indictment and prosecution for making false statements under 18 U.S.C. § 1001 and for violating the Computer Fraud and Abuse law under 18 U.S.C. § 1030. The U.S. government dismissed the case against Plaintiff without prejudice approximately one week before trial. Yet, the "rogue" ITMS unit continued to investigate Asian-American employees for years as Sherry Chen fought for justice in a dizzying array of forums from civil rights to administrative to here.

The United States knew or should have learned of the illicit nature of this "rogue unit" yet never let Sherry Chen return to her work at Commerce, relying on the interview in the illicit criminal investigation as the basis for firing Sherry Chen after a lifetime of decorated service.

Plaintiff's counsel does not know who took part in the cover-up of ITMS but by doubling down and fighting Sherry Chen for years as she protested her innocence, ITMS was able to go on, unchecked, a "rogue" police unit engaged in witch-hunts of Chinese-American employees while an American citizen and her team of lawyers, fighting the government in one tribunal after another, was kept in the dark.

Plaintiff attaches the following: Sen. Wicker's fact sheet that includes specific evidence that details that Sherry Chen was just of one of many Chinese Americans who the Commerce Department employees targeted for criminal investigation by ITMS without any legal authority or justification. (Ex. 1). The Washington Post article goes into more detail, including mentioning the Sherry Chen case. (Ex. 2). The promise of Commerce to conduct its own an internal investigation. (Ex. 3).

These exhibits reveal the following. Plaintiff was interrogated and investigated by officers under the color of law but without authority to conduct a criminal investigation. Plaintiff was one of a number of Asian-American Commerce employees targeted by this "rogue" police unit that took the law into its own hands and without the authority to do so. Plaintiff now knows these "rogue" police searched the desks of Asian-American employees after hours, searched emails and initiated numerous investigations that went nowhere, the books not closed even when there was exculpatory material. Plaintiff now has a reasonable explanation as to why the U.S. government fought her on every front and hid the truth from her. And from her attorneys. So ITMS could go on and ferret out Asian-American spies in our midst.

3

If Plaintiff's attorneys knew these facts when they filed the original complaint and motion to amend, the case would have been presented differently as a seminal one that reflects how anti-Asian-American prejudices led to the wrongful arrest and prosecution of an innocent scientist and the continuing persecution for close to a decade.  Plaintiff's counsel wants that chance to make this case.

Plaintiff awaits the final report of the Senate. She knows now that the criminal investigation conducted by agents acting under the color of law was **without authority**. She knows more whistleblowers have come forward, and hence, there are more revelations to come. She knows Commerce is conducting an internal investigation. There may be other investigations, including by the House, of anti-Asian bias.  Accordingly, she requests a further extension of the stay to 120 days after the Senate Report so she can incorporate facts from other related investigations and seek leave to amend the complaint. This will allow for judicial economy and not burden the Court.

In support of this motion, Plaintiff is seeking judicial notice of the existence and facts provided in the Senate and Department of Commerce Letters, the Senate Committee Fact Sheet, in accordance with Rule 201(b) of the Federal Rules of Evidence, which allows judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Courts regularly take notice of the correspondence, reports, and investigations of Congress. (*See generally* 31A C.J.S. *Evidence* § 64).  Plaintiff seeks judicial notice of the publication of the investigative report by a Pulitzer Prize winning investigative journalist at the Washington Post as a fact that cannot be reasonably questioned.

## II.     PROCEDURAL HISTORY

On January 18, 2019, Plaintiff filed her Complaint (Doc. 1). On September 18, 2019, Plaintiff filed a Motion to Amend its Complaint (Doc. 27) and an Amended Complaint (Doc. 23). On November 12, 2019, the government filed a Response in Opposition to the Motion. (Doc. 23).

On April 23, 2021, Plaintiff filed a Motion to Stay the proceedings (Doc. 32), which stated in part that "Plaintiff anticipates that her attorneys may come into possession of critical and significant information that could have a great impact on the Court's decision."

Plaintiff did not anticipate the Washington Post's investigation. (Ex. 1). Plaintiff anticipates there would be an additional Commerce investigation. (Ex. 2). But she knows now from the documents she has received that the future Senate and Commerce Report will continue to provide critical and significant information that could have a great impact on the Court's decision. (Ex. 3). Hence, Plaintiff moves for a further stay out of the reasonable expectation that more critical information for this Court to know will now come from not only the Senate but also Commerce and the House. For the sake of judicial economy and out of respect for the Court's and Defendant's time, Plaintiff requests a stay so she can incorporate the House and Commerce investigation findings as she amends the complaint.

By requesting an extended leave, this motion preserves the present status of the case as the Court has not yet ruled on Plaintiff's Motion to Stay and on Plaintiff's previous Motion to File an Amended Complaint. The procedural posture of this case is no different than it was when Plaintiff filed a Motion to Amend its Complaint (Doc. 27) and an Amended Complaint (Doc. 23) and when the government filed a Response in Opposition to the Motion on November 12, 2019. It prevents a premature filing and waste of judicial resources as Sherry Chen's attorneys only have a preview of what is to come.

A stay until 120 days after the report Commerce will allow the amended complaint to include the critical details, name additional defendants, and provide a basis for the causes of action that was not available until these facts became known. This is important not only for Plaintiff but for all Americans, as this case provides knowledge about a government led witch-hunt against innocent Chinese Americans working at Commerce. It could have been any other Chinese American at Commerce, for Sherry Chen, like all others targeted by this rogue force, was an "American citizen" but "Chinese National" in their eyes.

### III. ARGUMENT

#### A. Discovery of a Smoking Gun

Plaintiff has only recently learned of the specific facts that are likely to be included in the OIG report through a Fact Sheet issued by the Office of Senator Wicker (R-Miss.) on May 24, 2021, a May 14, 2021 letter from the Department of Commerce to Senator Wicker, and a May 24, 2021, investigative report by the Washington Post that contained a detailed description of what can only be regarded as criminal activities by certain officials within the Department of Commerce including those within the ITMS, which is the very unit whose agents interviewed and investigated Plaintiff, and which directly led the criminal charges being brought against her. Prior to this, Plaintiff could not have learned of these critical new facts important to the facts and claims that were raised in Plaintiff's Original Complaint and Motion to Amend the Complaint and Amended Complaint. Each of the three documents is discussed in seriatim.

#### 1. Senator Wicker's Fact Sheet

According to Sen. Wicker's Fact Sheet, among other things,

> The ITMS has engaged in a troubling variety of investigative activities without proper authorization. . . . Since the ITMS lacks independent police powers, the U.S. Marshals Service has been providing a limited delegation of law enforcement

> authority to agents through the Special Deputation program for the purpose of providing protection to the Secretary and the Department's critical assets. Although the ITMS originally provided only protective services, the undefined meaning of "critical asset" allowed agents to engage in a variety of law enforcement activities that likely exceed the scope of the Special Deputation.
>
> Over time, the ITMS began regularly conducting criminal investigations and eventually began using counterintelligence tools to gather information about both foreign visitors and U.S. citizens--despite lacking any proper form of authorization. . . . In essence, officials justified involvement in any matter they saw fit by classifying it as a threat to a "critical asset."
>
> As a result, the ITMS has mutated into a rogue, unaccountable police force without a clear mission. In one instance, the ITMS investigated a Chinese-born scientist employed at the Department on charges of espionage, interrogating her for hours and drafting a criminal referral to federal prosecutors. Officials ultimately insufficient evidence after she was arrested and dropped all criminal charges.

(Ex. 1).

Although not named in the Wicker Fact Sheet, this undoubtedly refers to Plaintiff. According to the Complaint and First Amended Complaint, Plaintiff was interviewed in 2014 by two investigators, Defendants Andrew Lieberman and Michael Benedict, who were part of the rogue ITMS unit and lacked the authority to interview, investigate, or draft a criminal referral.

The Fact Sheet also reports that while Ranking Member Senator Wicker requested documents from the OIG regarding "similar allegations related to abuse of authority in the ITMS in recent years," and officials have released "a limited portion of documents relevant to this investigation. To date, this request has not been completed."

### 2. Department of Commerce Letter

On May 14, 2021, the Department of Commerce sent a letter to Sen. Wicker that included, among other things, that the Department "takes very seriously the allegations" raised by him and has taken "several steps to address the situation in ITMS: (1) directed ITMS to suspend all criminal/law enforcement investigations; (2) on April 26, 2021, attorneys withing the

7

Departments OIG's office had begun "a review of ITMS operations to identify and propose solutions for substantiated management and operational deficiencies"; (3) that the Department would coordinate with the OIG's office into the allegation that "email searches were inappropriately target persons of Chinese or Asian descent"; (4) on May 13, 2021, the Department suspended all ongoing ITMS investigations; and (5) that the rights of ITMS whistleblowers would be respected "and that they will not be retaliated against for their participation in any past or future inquiry into the issues raised in your letter." This confirms the bias against Chinese Americans, that the ITMS was acting without authority, and that Commerce will provide further details in the future.

### 3. Washington Post Investigative Report

On May 24, 2021, the Washington Post published an investigative report that stated ITMS, without authority to do so, engaged in a witch hunt for Chinese spies for over a decade, ITMS "covertly searched employees' [of the Commerce Department] offices at night, ran broad keyword searches of their emails trying to surface signs of foreign influence and scoured Americans' social media for critical comments about the census . . . ." (Ex. 3). The report also stated that ITMS "searched Commerce servers for particular Chinese words . . . that resulted in the monitoring of many Asian American employees over benign correspondence . . . .

"As of September [2021], ITMS had 17 employees and a $5.38 million budget . . . ." (Ex. 3). "A year after his arrival, [George] Lee appeared to acknowledge that special agents had limited law enforcement powers. In a memo obtained by the Post, Lee wrote to his supervisors in the Office of Security that the agents 'may lack legal authority to conduct an appreciable portion of its investigative efforts particularly criminal investigations.'" *Id*. Those agents included Lieberman and Benedict.

8

The Post reports that the ITMS "looked for suspicious foreign connections among employees and surreptitiously monitored employees' communications on work computers and phones . . . ." According to a letter obtained by the Post, "Lee conveyed the information to the Foreign Influence Task Force at the FBI and the Office of Intelligence and Analysis at the Department of Homeland Security . . . ." The Post reports

> [a]s of Oct 23, [ITMS] had 1,183 open cases, nearly half dating to 2018 or earlier and the large majority still in preliminary stages . . . .
> . . . .
> "Mr. Lee has discriminately targeted ethnic Chinese foreign guests/visitors and employees as well as other ethnic personnel" . . . .
>
> Lee also ordered two agents to conduct broad searches on department servers, scanning . . . for keywords [in Chinese] . . . [that] are listed in a document that characterizes them as words that appear in the names of talent recruitment programs sponsored by the Chinese government . . . . The search brought back the names of predominantly Asian American employees . . . .

### 4. The Three Documents are Relevant to Plaintiff

It is not known when the Senate Commerce Committee will release the final report or a part thereof, but it is possible that it will be within weeks and will reveal a rogue police operation where agents without the authority to do so, targeted individuals of Chinese origin. This is entirely consistent with the allegations in the Complaint and Amended Complaint that provide further factual support of the malicious prosecution and false arrest claims and reveal a lack of authority to conduct the criminal investigation of Plaintiff.

Further, the new facts are closely connected to Plaintiff's allegations: 51 paragraphs from a total of 120 paragraphs in the original complaint specifically refer to the Commerce investigators. The remaining come from the illegal investigation and interview by ITMS agents of Plaintiff.

In short, had Lieberman and Benedict followed the law, Plaintiff would never have been criminally investigated. Sherry Chen would not have been arrested and charged by the United States with eight counts of violating federal law.

If Plaintiff's counsel had only known, she would have been able to plead with far greater particularity a set of allegations that are not only actionable but may overcome any defense of sovereign immunity.

For example, the introductory paragraphs of the original complaint, 4-10 state:

4. An acclaimed scientist, Ms. Chen served the National Weather Service as a hydrologist, whose flood forecast model and hard work literally saved lives during the historic flood of the Ohio and Mississippi Rivers in 2011.

5. Entirely based on a number of innocuous questions that Ms. Chen asked a colleague, on May 24, 2012, the colleague wrote an e-mail to US Army Corps Engineers Division of Security that falsely accused this "Chinese national" of seeking sensitive information that would betray U.S. national security interests with the intent of sharing this information with the Chinese government.

6. This information was neither secret or sensitive.

7. One glance at the information would have shown it was not as described by Ms. Chen's colleague. Even a cursory investigation would have led to Ms. Chen's immediate exoneration as she had done nothing wrong. Ms. Chen never betrayed national security interests or shared secret information, nor did she have any intent to share such information. Ms. Chen had been honored for her service to our nation and is a proud U.S. citizen.

8. However, this was the just of beginning of an effort to find crimes committed by Ms. Chen without any basis in fact or the law after she was labeled a "Chinese national."

9. At the agency, the Office of Security was determined to find Ms. Chen guilty of a crime and it prepared a maliciously false report detailing Ms. Chen's alleged misconduct and, in doing so, ignored and then failed to disclose exculpatory evidence.

10. The false, misleading and malicious report laid the foundation for Ms. Chen's indictment and arrest by the Federal Bureau of Investigation ("FBI") in October 2014.

If only Plaintiff knew, imagine how her counsel would have written these paragraphs. But Plaintiff never knew, the basic facts hidden from her for close to a decade as she fought for her name, her work, her life, in one tribunal after another as the government doubled down and the secret police force of Commerce continued to investigate Chinese employees for spying.

Throughout history, our courts have recognized that the United States must never be rewarded for covering up facts. Every life matters.  Courts have acted years later. *See, e.g.*, *U.S. v. Demjanjuk*, 367 F.3d 623 (6th Cir. 2004). In the same spirit, Plaintiff respectfully ask this Court to review the attached exhibits and grant Plaintiff time to incorporate the investigation findings in a Motion to Amend and Amended Complaint.

IV.    **CONCLUSION**

For the reasons stated above, it is respectfully requested that the Court order that Plaintiff may file a Motion to Amend and Amended Complaint 120 days after the publication of the Senate Committee Report to allow Plaintiff the benefit of incorporating facts from the Department of Commerce investigation of ITMS and possibly, a House Committee investigation into the persecution of Asian-American scientists. In addition, Plaintiff asks the Court to take judicial notice of the attached exhibits.

Plaintiff has met and conferred with counsel for the government before filing this motion. The government has stated Plaintiff met its requirements.

Respectfully submitted,

/s/ Michele L. Young (0062011)
Trial Attorney for Plaintiff
Michele L. Young Co., LPA
8525 Given Road
Cincinnati, OH 45243
Tel: (513) 617-9152
michele@michelelyounglaw.com

Peter Toren – Member NY, DC, and CA Bars
(admitted pro hac vice)
3028 Newark Street, NW
Washington, D.C. 20008
Tel: (646) 623-4654
ptoren@petertoren.com

11

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing was filed electronically on June 10, 2021 using the Court's CM/ECF system, which will serve notice of this filing on all counsel of record.

s/ Michele L. Young<br>
Attorney for Plaintiff